RED RIVER & LAKE OF THE WOODS RAILROAD COMPANY *vs.* ANDREW STURE.

May 16, 1884.

Public Lands — Act of Congress of March 3, 1875, Giving Right of Way to Railroads—Acceptance of Conditions.—The act of congress approved March 3, 1875, entitled "An act granting to railroads the right of way through the public lands of the United States," is in the nature of a general offer, which takes effect and becomes operative as a grant to a railroad company only when it has accepted its terms by a compliance with the conditions precedent prescribed in the act, and then only as of that date.

Same—Entry by Settler under Homestead Law—Vested Rights.—A settler who has entered public land of the United States under the provisions of the homestead law, although no patent has been issued, has an inchoate title to the land, which is property.    This is a vested right which can only be defeated by his own failure to comply with the conditions of the law.    If he complies with these conditions, he becomes invested with full ownership, and the absolute right to a patent.    Under the act of May 14, 1880, (21 U. S. St. 140,) his right relates back to the date of his settlement.

Same—Rights of Railroad Company.—As against such homesteader, a railroad company has not, under the act of March 3, 1875, a right of way over the land, unless such right was acquired by compliance with the provisions of the act before the date of his settlement.

**Practice—Power of Court to Replace Lost Records.**—A court has the power to replace its own records when lost or destroyed. This power extends to supplying any pleadings or other papers in civil cases, before as well as after judgment.

**Same—Verdict—Certainty.**—A verdict in favor of "*Adam* Sture, appellant," when, it should be "*Andrew* Sture, appellant," is sufficiently certain.

Condemnation Proceeding.

Appeal by the railroad company from a judgment of the district court for Polk county, *Stearns*, J., presiding:

*Ives & Hatlestad*, for appellant.

*Leo & Steenerson*, for respondent.

MITCHELL, J.[1] This railroad company was organized in April, 1882, as a corporation, under the provisions of Gen. St. 1878, *c. 34*, title 1. In June of the same year, upon its petition, commissioners were appointed to assess damages and fix the compensation to be paid to the persons therein named, including Sture, through whose lands its road was located. These commissioners having made and filed their report, Sture appealed from their award of damages to him as owner or occupant of 160 acres, a part of which was proposed to be taken for right of way. On the trial Sture testified (and this was undisputed) that he had resided on and occupied this land since the first day of May, 1879, *as a homestead settler under the laws of the United States*, and had improved it. We understand this to imply that he had entered it under the act of congress commonly known as the homestead law, by making and filing the proper affidavit, and paying to the register or receiver the sum of $10, in compliance with the provisions of U. S. Rev. St. § 2290, but that no patent had been issued, five years from the date of such entry not having expired.

Under these facts the company claims that it had the right of way over the premises, under U. S. Rev. St. § 2477, which reads as follows: "The right of way for the construction of highways over public lands not reserved for public uses, is hereby granted." This act was passed in 1866. We are strongly of opinion that the term "high-

[1] Dickinson, J., because of illness, took no part in this decision.

ways," as here used, never included railways, but refers only to the common highways of the country, as generally understood. But, however this may be, the act of March 3, 1875, entitled "An act granting to railroads the right of way through the public lands of the United States," (18 U. S. St. 482; Supp. to U. S. Rev. St. 187,) covers the whole subject-matter, and is intended to prescribe the only rule governing the right of way for railroads over public lands, and is the only law applicable to the case. This act of March 3, 1875, is in the nature of a grant or offer to any and all railroad companies which may see fit to accept its terms and avail themselves of its benefits. It prescribes the terms or conditions upon which any company desiring to secure its benefits may do so. The fourth section requires it, within a certain time, to file with the register of the land-office for the district where such land is located, a profile of its road; and upon approval thereof by the secretary of the interior, that it shall be noted on the plats in the land-office; "and *thereafter* all such lands over which such right of way shall pass, shall be disposed of subject to such right of way." This is not in the nature of an absolute grant *in præsenti* to a designated company, as in the case of *Railroad Co.* v. *Baldwin,* 103 U. S. 426, where it was held that, as soon as the route is definitely fixed, the title attaches from the date of the act. This act is in the nature of a general offer to the public, which takes effect and becomes operative as a grant to a particular company only when it accepts its terms by a compliance with the conditions precedent prescribed in the act itself. This proposition rests on elementary principles. A grant, like any other contract, must have two parties,—a grantor and grantee,—and an offer not accepted constitutes no contract. This is clearly the theory on which the act is framed. It merely offers or proposes to give any railroad company, upon compliance with its terms, the right of way over public lands to which private rights have not attached at or before the date of such compliance. This is clearly implied in the third section, which provides for the manner in which possessory claims on the public lands may be condemned, and in the fourth section, which provides that *thereafter* (*i. e.*, after the company has complied with the provisions of the act) all such lands over which such right of way shall pass, shall

v.32—7

be disposed of subject to such right of way. This is also the construction placed upon it by the interior department. 2 Copp, Pub. Land L. 816–823.

It is claimed, however, that an entry under the homestead law gives the settler no vested rights in the land until the issue of the patent. To this we cannot assent. We are aware that it has been authoritatively decided in *Frisbie* v. *Whitney*, 9 Wall. 187, and the *Yosemite Valley Case*, 15 Wall. 77, that occupation and improvement on public lands with a view to pre-emption do not confer any vested right in the land as against the United States; that this is only obtained when the purchase-money has been paid and the receipt of the land-office given to the purchaser. This is put upon the ground that until such time the proposed pre-emptor has merely a right to be preferred in the purchase over others, provided a sale is made by the United States. But a homesteader, after entry, occupies an entirely different position. He has in fact purchased. His entry, which is made by making and filing an affidavit and paying the sum required by law, is a contract of purchase, which gives him an inchoate title to the land, which is *property*. This is a substantial and vested right which can only be defeated by his failure to perform the conditions annexed. It is true, no certificate or patent can be issued until the expiration of five years from the date of the entry, the United States retaining the legal title to insure performance of these conditions. But the vested right of the settler attaches to the land at the time of his entry, and is liable to be defeated only by his own failure to comply with the requirements of the law. If he complies with these conditions, he becomes invested with full ownership and the absolute right to a patent, which, when issued, relates back to the time of the entry; and, under the act of May 14, 1880, (21 U. S. St. 140; Supp. to U. S. Rev. St. 525,) his right under the entry relates back to the date of the settlement. Until forfeited by his own failure to perform the conditions of his purchase, this right of property acquired by his entry must prevail, not only against individuals, but against the government itself. This is the view expressed in an opinion of the attorney-general of the United States, addressed to the secretary of war, in July, 1881. See 1 Copp, Pub. Land L. 387.

We are referred to the case of *Flint & P. M. Ry. Co.* v. *Gordon*, 41 Mich. 420, in support of a contrary view. While entertaining the highest respect for the opinions of the able court who decided that case, we are unable to concur in all the views there expressed by them.

It follows that there was no error prejudicial to the railroad company in the charge of the court that Sture had certain rights in this land as a homesteader under the laws of the United States, and that the jury were to determine to what extent these rights have been impaired by the construction of the road; and that if the value of these rights in the land was lessened by the construction of the road across this land, Sture would be entitled to recover the difference between the value of those rights as they would have been without the construction of the road, and their value as diminished by such construction. And for the same reason there was no error in refusing to instruct the jury that the measure of Sture's damages would not be the value of the land so taken, but simply the damage to his possession. As this was the only portion of the charge excepted to, this appeal raises no question as to whether the court afterwards correctly instructed the jury as to the basis upon which the value of Sture's interest in the land was to be estimated, and the amount of his damages ascertained. But we might remark that inasmuch as the homesteader had a right to the land in the condition in which it was when he entered it, and to all improvements which he has put upon it, and as he will have to perform the same conditions, in order to get his patent, as if no part of the land had been taken for the purposes of this road, practically the amount of his damages would be the same as if he was the owner in fee.

We would suggest that it nowhere appears that this company has ever complied with the conditions of the act of March 3, 1875, which are precedent to its acquiring any rights under it. We might have rested our decision on this point, but we have deemed it advisable to waive this, and decide the case upon other questions that may be of more general importance.

2. On the trial the railroad company moved to dismiss the appeal, on the ground that no notice of appeal had been served. It based this

motion upon the fact that neither notice of appeal nor proof of service was on file. Sture then presented an affidavit to the effect that notice of appeal had in fact been duly served, (a copy of which was attached to the affidavit,) and that the original notice of appeal, with proof of its service, had been duly filed with the clerk of the court, but had, by some one unknown, been removed from the files. The company made no counter-affidavits, whereupon the court permitted Sture to file the copy of notice of appeal and affidavit of service, and denied the motion to dismiss. This was in effect an order replacing the lost files of the court. Independent of statute, and by virtue of its inherent powers, unaffected by lapse of time, every court has the right to replace its records when lost or destroyed by accident, negligence, or wantonness. If it had not this power, the rule that the record imports absolute verity, and is exclusively admissible evidence of matters properly incorporated in it, would work much mischief. The power which enables a court to supply an entire record after judgment extends to supplying any pleadings or papers in civil cases prior to judgment. The mode of procedure, as well as the evidence upon which the court acted in this case, was somewhat informal; but, at least in the absence of any counter-affidavit, the action of the court was proper.

3. There is nothing in the objection that in the title to the verdict, and in the verdict itself, the jury called the party "*Adam* Sture, appellant," instead of "*Andrew* Sture, appellant." The entitling of the verdict was superfluous, as was the name of the appellant in the body of the verdict. The verdict is stated to be for the *appellant*, and by reference to the record this is sufficiently certain.

Judgment affirmed.