[No. 806.   Decided May 24, 1893.]

EVAN ENOCH, *Respondent*, v. THE SPOKANE FALLS AND NORTHERN RAILWAY COMPANY, *Appellant*.

APPROPRIATION OF PUBLIC LANDS — RIGHTS OF PRE-EMPTION CLAIMANT — MEASURE OF DAMAGES — INSTRUCTIONS.

The rights of a preëmption claimant to public land of the United States are reserved by certain provisions of the act of congress of March 3, 1875, entitled "An act granting to railroads a right-of-way through the public lands of the United States;" and where a railroad appropriates public lands upon which a preëmption entry has been properly made prior to the filing of a profile of the road in the office of the secretary of the interior, the railroad is liable for damages.

Where the only objection to an instruction is that it is too general in its terms, the proper practice is to move to make it more specific.

Under the provisions of art. 1, § 16 of the constitution, the measure of damages, where land is appropriated by a railroad for right-of-way purposes, is the fair market value of the land taken at the time of the appropriation, together with the amount of depreciation, if any, in the value of the land not taken, and these respective amounts should be ascertained without regard to any benefits that may have resulted from the construction, or proposed construction, of the railroad. (*Northern, etc., R. R. Co. v. Coleman*, 3 Wash. 234, overruled.)

*Appeal from Superior Court, Spokane County.*

*McBride & Allen*, for appellant.

*Ridpath & Marshall*, for respondent.

The opinion of the court was delivered by

ANDERS, J. — On the 16th day of March, 1889, the respondent settled upon the northwest quarter of section 34, in township 29 north, range 42 east, W. M., and on the 18th day of March, 1889, he filed his declaratory statement in the United States land office at Spokane Falls, Washington, and thereby claimed the right to enter the said land under the provisions of the preëmption laws of the United States. He built a house thereon, soon after his settlement, in which he resided continuously up to the time of the trial of this action, and cleared some fifteen or twenty acres of the land for cultivation. In June and July, 1889, the appellant constructed a railroad across these premises, and appropriated therefor a strip of land one hundred feet in width, extending from a point about ten rods west of the southeast corner to a point on the west line thereof about thirty-three rods south of the northwest corner.

The respondent brought this action to recover compensation for the damages alleged to have been sustained by the taking and appropriating of the right-of-way, and the digging of holes in and removing of earth from parts of the

land outside of the limits of the strip taken for the right-of-way. The appellant contends that the land claimed by the respondent was, at the time of the building of the railroad, public land of the United States, and that it was entitled to the right-of-way through the same by virtue of the provisions of the act of congress of March 3, 1875, entitled "An act granting to railroads a right-of-way through the public lands of the United States." Supp. Rev. St. U. S. (2d ed.) 91.

It is not shown by the record or claimed by the respondent that he had, prior to the construction of the railroad, or prior to the filing of the profile of appellant's road with the register of the land office at Spokane Falls, and the approval thereof by the secretary of the interior, paid for the land claimed by him. And this being so, it was within the power of congress under the rulings of the supreme court of the United States, to grant an absolute and unincumbered right-of-way through this land to the railroad company, or even to withdraw the land from the operation of the preëmption laws altogether, and to confer the right to purchase the same upon some other person. *Frisbie v. Whitney*, 9 Wall. 195; *Hutchings v. Low*, 15 Wall. 77.

These cases maintain the doctrine that the power of regulation and disposition over the public lands of the United States, conferred upon congress by the constitution, only ceases, under the preëmption laws, when all the preliminary acts prescribed by those laws for the acquisition, including the payment of the price of the land, have been performed by the settler, and that when these prerequisites have been complied with, the settler, for the first time, acquires a vested interest in the property occupied by him, of which he cannot subsequently be deprived. And the same view was expressed by the supreme court of California in *Hutton v. Frisbie*, 37 Cal. 475.

It seems to be conceded that the appellant has complied

with the conditions of the act of March 3, 1875, and is
therefore entitled to all of the privileges and benefits
thereby intended to be conferred on railroad companies.
It was duly incorporated under the laws of the then Ter-
ritory of Washington on the 17th day of April, 1888, and
a copy of its articles of incorporation, together with proof
of its organization, was filed in the office of the secretary
of the interior on June 5, 1888.   On November 21, 1889,
it filed a duly verified profile of its road, as definitely
located, with the register of the United States land office
at Spokane Falls, and the same was approved by the sec-
retary of the interior on December 14, 1889.    The require-
ments of the law having been thus complied with, it is
insisted on behalf of appellant— *First*, That the grant of the
right-of-way took effect in its favor on June 5, 1888, when
a copy of its articles of incorporation and proofs of organ-
ization were filed and approved by the secretary of the
interior, which was long prior to the initiation of respond-
ent's claim under the preëmption law, and was, therefore,
not affected by such claim; and, *second*, That whether the
grant became operative at that date or subsequently, still
the respondent had no such an interest in the land occu-
pied by him as entitled him to indemnity for the right-of-
way appropriated by the appellant, for the alleged reason
that the land was at the time public land of the United
States, and therefore included in appellant's grant.   On
the other hand the respondent contends that the pro-
visions of the act of congress under which the appellant
claims did not inure to the benefit of appellant until it filed
a profile of its road in the office of the secretary of the
interior, and that it then only took effect as of that date;
and, furthermore, that by the terms of said act the rights
of preëmption and homestead claimants are recognized and
reserved from the operation of the grant.    We think the
construction contended for by the respondent is the only

one warranted by a fair interpretation of all the provisions of the statute.

If the first section stood alone it would be difficult to escape the conclusion that it was the intention of congress that the grant therein mentioned should attach in favor of any railroad company immediately upon the filing of a copy of its articles of incorporation and proofs of organization as therein provided.    But a consideration of subsequent sections leads us to the conclusion that such was not the intention of the framers of the act.    By the fourth section it is provided "that any railroad company desiring to secure the benefits of this act shall within twelve months after the location of its road, if the same be upon surveyed lands, and if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the secretary of the interior the same shall be noted upon the plats in said office, and thereafter all such lands over which such right-of-way shall pass shall be disposed of subject to such right-of-way."    From this provision it would appear that no railroad company can claim to be a grantee of a right-of-way over the public lands until a profile of its road has been filed and approved as therein specified.

And after that has been done, the grant is not operative upon lands to which private rights have previously attached.    This is the clear import of the language used in the third section, which provides the manner in which private lands and possessory claims on the public lands of the United States may be condemned.    The respondent in this case was certainly a possessory claimant on the public lands of the United States, and the appellant had therefore no right to appropriate any portion of his "claim"

except upon payment of a just compensation, to be ascertained in the manner provided by law.

In *Red River, etc., R. R. Co., v. Sture*, 32 Minn. 95 (20 N. W. Rep. 229), the supreme court of Minnesota, speaking of this act of March 3, 1875, said:

"This is not in the nature of an absolute grant *in præsenti* to a designated company, as in the case of *Railroad Co. v. Baldwin*, 103 U. S. 426, where it was held that, as soon as the route is definitely fixed, the title attaches from the date of the act.     This act is in the nature of a general offer to the public, which takes effect and becomes operative as a grant to a particular company only when it accepts its terms by a compliance with the conditions precedent prescribed in the act itself.     This proposition rests on elementary principles.     A grant, like any other contract, must have two parties — a grantor and grantee — and an offer not accepted constitutes no contract.     This is clearly the theory on which the act is framed.     It merely offers or proposes to give any railroad company, upon compliance with its terms, the right-of-way over public lands to which private rights have not attached at or before the date of such compliance."

Such is also the view of the supreme court of Oregon, as expressed in *Larsen v. O. R. & N. Co.*, 19 Or. 240 (23 Pac. Rep. 974). The court there stated, in construing this act, "it does not assume to grant the possessory claims of those who had acquired them prior to the time of compliance with the act by a railroad company claiming the benefit of the act, for the reason that the third section of the act provides for the condemnation of such possessory claims.     This provision is a clear recognition of such claims as against any corporation claiming by title subsequent to their acquisition." It is true that in both of the above cases the rights of a homestead claimant were involved, but we think the same rule must be held applicable as well to the possessory claims of those occupying lands under the provisions of the preëmption laws.

At the trial of this cause the judge, among other instructions, charged the jury —

"That in estimating the damages, if any, which the jury may find from the evidence the plaintiff has sustained by reason of the acts of the defendant, the jury are to disregard any evidence which may have been delivered to them as to enhancement in value of the lands in question, and consider only the amount of damages, if any, plaintiff has suffered by reason of the acts of defendant set out in the complaint."

The following instruction was also given to the jury:

"In estimating the damages which the plaintiff will be entitled to recover, if you find him entitled to recover anything, you must consider two elements of damages—*First:* The actual market value of the strip of land actually taken by the railroad company at the time it was taken, irrespective of any benefit from the proposed railroad."

It is claimed by the learned counsel for the appellant that these instructions were erroneous for the reason that, as given, they permitted the jury to fix the value of the land, at the time the railroad was constructed over it, without deducting the amount which the land had been enhanced in value by reason of the construction of the proposed road.   The last instruction above set forth is certainly unobjectionable, for it is in accordance with § 16, art. 1 of our state constitution, which provides that when private property is taken for a right-of-way by any corporation other than municipal, compensation shall be made as therein specified, "irrespective of any benefit from any improvement proposed by such corporation."   If the instruction was too general in its terms, it was the duty of the appellant to ask the court to make it more specific, instead of merely objecting to it in the form as given.

Nor do we think the first instruction given by the court is open to just criticism.   If the court had permitted the jury in their estimation of damages to take into consideration the enhancement of the value of the lands in question,

it would have sanctioned an assessment which was not "irrespective of benefits," and hence, in contravention of the provision of the constitution above mentioned.    Under any view that may be taken of this constitutional provision, benefits cannot be set off against damages resulting from appropriations for rights-of-way for railroads.

Under the constitution the land owner is entitled to full compensation, in money, for the injury sustained, and that provision precludes payment of any part of such compensation in benefits.    But, in order that there might be no doubt upon this question, the framers of the section of the constitution under consideration further declared that such compensation should be ascertained irrespective of benefits. Does this phrase mean that the corporation making the appropriation may show that the value of the property, a part of which it takes for a right-of-way, has been enhanced by the construction or proposed construction of its road, and then deduct such enhancement from the present value of the land and only pay the remainder as damages?    Or does it mean that a person whose land is taken for the use of a railroad is entitled to its fair market value without regard to the causes that may have contributed to make up such value?    The latter is the construction given by the highest courts of several of the states whose constitutions contain a similar provision.

In *Giesy v. Cincinnati, etc., R. R. Co.*, 4 Ohio St. 308, which is a well considered case, it was held that the expression "irrespective of benefits," and the words "without deduction for benefits," both of which were used in the constitution of Ohio, were equivalent in meaning.    And in speaking of the compensation to be paid for land condemned for railroad purposes, the court, by RANNEY, J., there said:

"The word 'irrespective' relates to this full compensation, and binds the jury to assess the amount, without look-

ing at or regarding any benefits contemplated by the
construction of the improvement.    Where this is done and
this consideration wholly excluded, the jury have nothing
to do but ascertain the fair market value of the property
taken; which is but saying that nothing shall be deducted
from that value on account of such benefits.    The opposite
construction, so far from requiring the assessment to be
made *irrespective* of these benefits, in effect compels the
jury to ascertain their value to the property, and to deduct
so much as they have increased it; thus using a word in-
troduced for the sole benefit of the property holder in such
manner as to deprive him of a portion of the acknowledged
present value of his property, or to allow him to be paid
for a part of its value in benefits; and, at the same time,
fastens upon the constitution the gross inconsistency of
allowing a corporation to procure the right-of-way upon
easier terms than could be done by the public.''

And in the same opinion the court further said:

''The jury are not required to consider how much, nor
permitted to make any use of the fact that it may have in-
creased in value by the proposal or construction of the
work for which it is taken.''

This construction of the constitution was adhered to in
*Little Miami R. R. Co. v. Collett*, 6 Ohio St. 182, and in
*Cincinnati, etc., Ry. Co. v. Longworth*, 30 Ohio St. 108.
And a substantially similar view is held in *St. Louis, etc.,
R. R. v. Anderson*, 39 Ark. 167; in *Springfield, etc., Ry.
v. Rhea*, 44 Ark. 258; in *St. Joseph, etc., R. R. Co. v. Orr*,
8 Kan. 419; in *Hunt v. Smith*, 9 Kan. 137; in *Reisner v.
Union Depot & R. R. Co.*, 27 Kan. 382; and by the su-
preme court of Alabama and California.    See *Alabama,
etc., R. R. Co. v. Burkett*, 42 Ala. 83; *Pacific Coast Ry.
Co. v. Porter*, 74 Cal. 261 (15 Pac. Rep. 774); *Muller v.
Railway Co.*, 83 Cal. 240 (23 Pac. Rep. 265); *San Ber-
nardino, etc., Ry. Co. v. Haven*, 94 Cal. 489 (29 Pac. Rep.
875).

And in the supreme court of Iowa, under a constitutional
26—6 WASH.

provision that the jury "shall not take into consideration any advantages that may result to said owner on account of the improvement for which it is taken," the point was made, in *Britton v. D. M., O. & S. R. Co.*, 59 Iowa, 540 (13 N. W. Rep. 710), that if the value of the land had been increased by the construction of the road, that should be considered and the damages reduced because of such fact, but the court held that all benefits and advantages were included in estimating the value, and none excluded.

We are not unmindful of the fact that this court laid down a different rule from that enunciated in the above decisions for the measure of damages, in cases like the one before us, in *Northern, etc., R. R. Co. v. Coleman*, 3 Wash. 234 (28 Pac. Rep. 514); but upon further reflection and from an examination of authorities which were not brought to our attention in that case, we have become satisfied that the equitable rule there adopted is at variance with the provisions of § 16 of art. 1 of our state constitution. That will, therefore, no longer be deemed an authoritative expression of the opinion of this court upon that question.

We think that the true measure of damages in such cases is the fair market value of the land taken at the time of the appropriation, together with the amount of depreciation, if any, in the value of the land not taken, and that these respective amounts should be ascertained irrespective of, that is, without regard to, any benefits that may have resulted from the construction or proposed construction of the railroad.

Perceiving no error in the record, the judgment of the court below must be affirmed, and it is so ordered.

DUNBAR, C. J., and HOYT, STILES and SCOTT, JJ., concur.