(76 N. W. Rep. 233.)

---

THE JAMESTOWN & NORTHERN RAILROAD COMPANY *vs.* THEODORE J. JONES.

Opinion filed June 4th, 1898.

**Public Lands—Railroad Grant—Rights of Pre–emptor.**

> As against settlers, the grant of a right-of-way to a railroad company under the act of congress passed in 1875 attaches only after the profile of the road has been approved by the secretary of the interior, and not from the time the road itself is constructed.

**Squatters Rights.**

> One who settles upon land before such profile is approved, with intent to make a pre-emption filing thereon, secures such a possessory right therein as is required to be condemned by section 3 of the act, although at the time of his settlement the road has been constructed, and is in full operation. The land is, from the time of such settlement, land disposed of, within the implication of section 4; and hence the settler does not take subject to the right of way, which is, under the statute, superior to the title of the settler only as to land disposed of after the approval of the profile.

**Effect of Failure to File Declaratory Statement in Time.**

> *Held*, further, that the failure of the settler to file his declaratory statement within the time prescribed by the statute will not affect his rights, as against the railroad company's right-of-way.

**Failure to Make Final Proof.**

> Neither will his omission to make final proof within the statutory period destroy his superior rights, when he is prevented by the fact that there is an uncanceled homestead entry against the land.

**Abandonment of Entry—Rights of Railroad Company.**

> The rule that, when public lands have been entered, they are segregated from the public domain, and that thereafter a railroad grant cannot attach to them, despite the fact that such entry is subsequently abandoned or set aside, does not apply to the grant of a right-of-way under the act of congress passed in 1875. As against the United States, the grant attaches at the time of the approval of the profile, even though such land has been already filed upon,— subject, however, to such prior entry. But, if the same is thereafter canceled or abandoned, the grant of the right-of-way becomes absolute.

Appeal from District Court, Stutsman County; *Glaspel*, J.

Action by the Jamestown & Northern Railroad Company against Theodore J. Jones. Defendant had judgment, and plaintiff appeals.

Affirmed.

*Ball, Watson & Maclay*, for appellant.

Prior to the enactment of the general act of 1875, similar grants had been made to other companies. In construing similar acts the Supreme Court has held that they constituted a present grant, and that the title acquired by settlement subsequently made upon land over which the right-of-way was granted, was subject to such grant. *Baldwin* v. *Railroad*, 103 U. S. 426; *Railroad* v. *Dyer*, 1 Sawyer, 641; *Railroad* v. *United States*, 92 U. S. 733; *Railroad* v. *Cook*, 163 U. S. 491; *Railroad* v. *Railroad*, 160 U. S. 77. The rights of a railroad company under the act of 1875, are fixed by the date of filing map of definite location. *Larson* v. *R. Co.*, 23 Pac. Rep. 974; *Hamilton* v. *R. Co.*, 28 Pac. Rep. 408; *Enoch* v. *R. Co.*, 33 Pac. Rep. 966; *Reidt* v. *R. Co.*, 34 Pac. Rep. 150; *Kinion* v. *R. Co.*, 24 S. W. Rep. 636. When plaintiffs map was approved March 13th, defendants

rights had not attached to the land.   They could not attach until he made his filing in June.   Mere settlement or cultivation was not enough to segregate the tract from the category of public lands.   *Railroad* v. *Dunmeyer*, 113 U. S. 629, 5 S. C. Rep. 566; *Railroad* v. *Whitney*, 132 U. S. 357, 10 S. C. Rep. 112; *Campbell* v. *Wade*, 132 U. S. 34, 10 S. C. Rep. 9; *Frisbie* v. *Whitney*, 9 Wall. 187; *Whitney* v. *Taylor*, 158 U. S. 85; *Yosemite Valley Case*, 15 Wall. 77; *Railroad* v. *Colburn*, 164 U. S. 383; *Doran* v. *Railroad*, 24 Cal. 245; *Bybee* v. *Railroad*, 139 U. S. 679; *Hamilton* v. *Railroad*, 28 Pac. Rep 408; *Railroad* v. *Burr*, 24 Pac. Rep. 1032.   This land was in actual use for purposes of business and trade in February, 1883, when Jones made entry thereon and consequently was not subject to pre-emption entry.   Subd. 3, § 2258, Revised Statutes, U. S.; *Ex parte Davidson*, 57 Fed. Rep. 883.   Assuming that defendant lawfully initiated a settlement on February 23rd, 1883, yet he lost the same as against the rights of plaintiff by his failure to file declaratory statement within three months from the date of his settlement.   § 2265, U. S. Rev. Stat.   By failure to make his final proof within thirty months thereafter, Jones rights became forfeit, plaintiffs rights instantly attached to the land and became paramount. § 2267, U. S. Rev. Stats; *Hamilton* v. *Railroad*, 28 Pac. Rep. 408; *Alexander* v. *Railroad*, 40 S. W. Rep. 104; *Kinion* v. *Railroad*, 24 S. W. Rep. 636; *Sproat* v. *Durland*, 35 Pac. Rep. 682.

*S. E. Ellsworth*, for respondent.

The act of March 3rd, 1875, does not operate as a present grant.   It entitled any company to obtain the right-of-way upon performing certain conditions.   *Spokane Falls, etc. R. Co.* v. *Zeigler*, 61 Fed. Rep. 372, 167 U. S. 65; *Red River, etc. R. Co.* v. *Sture*, 20 N. W. Rep. 229.   A railroad company cannot acquire rights under the act of March 3, 1875, without full compliance with the terms of the act including the filing of a profile of its road with the register of the proper land office, and the title when acquired dates from the last act necessary to such compliance.   *Lilienthal* v. *Ry. Co.*, 56 Fed. Rep. 701; *Larsen* v. *Ry. Co.*,

23 Pac. Rep. 975; *Hamilton* v. *Ry. Co.*, 28 Pac. Rep. 408; *Enoch* v. *Ry. Co.*, 33 Pac. Rep. 966; *Chicago, etc., Ry. Co.* v. *Van Cleave*, 33 Pac. Rep. 472; *Reidt* v. *Ry. Co.*, 34 Pac. Rep. 150; *Kinion* v. *Ry. Co.*, 24 S. W. Rep. 636. The act of March 3, 1875, grants to railroad companies, the right-of-way only over the public lands of the United States. "Lands to which any claims or rights of others have attached do not fall within the designation of public land." *Bardon* v. *Northern Pac. R. Co.*, 145 U. S. 806; *Wilcox* v. *Jackson*, 13 Pet. 516; *Newhall* v. *Savage*, 92 U. S. 76. The pre-emption laws are a means of disposing of public lands, and an entry of record under them, valid on its face is such an appropriation of the tract entered as segregates it from the public domain and precludes it from subsequent grant. *Spokane, etc. R. Co.* v. *Ziegler*, 61 Fed. Rep. 392; *Witherspoon* v. *Duncan*, 71 U. S. 210; *United States* v. *Turner*, 54 Fed. Rep. 228. Such entry prevails against individuals and the government as well. 1 Copps Pub-Land Laws, 387; *Kansas Pac. R. Co.* v. *Dunmeyer*, 113 U. S. 629; *Hastings, etc. Ry. Co.* v. *Whitney*, 132 U. S. 357; *Sturr* v. *Beck*, 133 U. S. 541. One who has settled on public lands with intention to obtain title under the pre-emption laws has a "possessory claim" within the meaning of section 3, of the act. *Washington, etc., R. Co.* v. *Osborn*, 169 U. S. 103; *Spokane, etc. R. Co.* v. *Ziegler*, 167 U. S. 65. Upon such failure of Jones as would forfeit his right the land would revert to the government, but not to the railroad company. The railroad company upon the filing and approval of its map is granted rights upon lands which the government then owned or had not disposed of, but no right is acquired in lands subsequently reverting to the government. *Kansas Pac. Ry. Co.* v. *Dunmeyer*, 113 U. S. 629; *DeLacey* v. *N. P. Ry. Co.*, 72 Fed. Rep. 726; *Johnson* v. *Bridal Veil L. Co.*, 33 Pac. Rep. 528; *Whitney* v. *Taylor*, 158 U. S. 85. Where a claimant is prevented from making proof because land was covered by another entry and the local land officers refused to receive his proof, his entry is not invalidated by the expiration of the time

allowed by law in which to make such proof. *Shepley* v. *Cowan*, 91 U. S. 338; *Weeks* v. *Bridgeman*, 159 U. S. 540.

CORLISS, C. J.   Plaintiff claims that it is entitled to a right-of-way over the defendant's land.   It is conceded that it has never purchased or condemned such right of way.   All the title it has must rest upon the act of congress passed March 3, 1875, entitled "An act granting to railroads the right-of-way through the public lands of the United States."   Section 1 of that act declares "that the right-of-way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory, except the District of Columbia, or by the congress of the United States, which shall have filed with the secretary of the interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take from the public lands adjacent to the line of said road, material, earth, stone and timber necessary for the construction of said railroad; also ground adjacent to such right-of-way for station buildings, depots, machine shops, side-tracks, turn-outs and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road."   The plaintiff was organized as a railroad corporation on the 17th of September, 1881, under the laws of the then Territory of Dakota. After its organization it surveyed a line of route for its road from a point near the City of Jamestown, in a northwesternly direction, through the County of Stutsman, to the northern boundary thereof.   The line ran through the premises in question.   The survey was finished October 30, 1881.   A map representing the survey was made, and thereafter the plaintiff, by resolution of its board of directors, adopted such survey as the definite route of its line of railroad.   In 1882 the road was constructed, and since that time trains have been continuously run thereover by the plaintiff.   On the 26th of January, 1883, the plaintiff filed with the secretary of the interior a copy of its

articles of incorporation, and due proofs of its organization under the same. On the 13th of March, 1883, plaintiff's map of definite location was filed with, and approved by, the secretary of the interior. But we find nothing in the case to show that it was ever filed in the office of the register of the land office, as required by section 4, of the act. We will assume, however, that it was in fact filed there, and was thereafter forwarded to the secretary of the interior; it being undisputed that since March 13, 1883, it has been on file in his office. Defendant claims title to the land under a settlement made by him, as a pre-emptor, on the 23rd day of February, 1883,—more than two weeks before the map of definite location was approved by the secretary of the interior. It is undisputed that he is the fee owner of the quarter section of land across which plaintiff claims a right-of-way, he having received a patent therefor. The only contention on the part of the plaintiff is that his right as owner is subject to the plaintiff's rights under the act of 1875. Plaintiff does not claim that it is the fee owner of the strip of land involved, but only that it has an easement therein under the act of congress. Not having condemned or purchased such easement it must, of course, show that it has obtained the same under that act.

Defendant, at the outset, lays down the broad proposition that, when the grant became operative as to the plaintiff, the land in question was no longer public land, because of the fact that there were then outstanding two pre-emption and one homestead filings against it. And in this connection he cites a number of decisions in support of the well established doctrine that in cases of land grants (not, however, for a right-of-way) the character of the land as public land is fixed by its condition at the moment the grant attaches, and that, therefore, if any portion of the grant has been previously segregated from the public domain by entry, it does not fall within the terms of the grant, even though such entry be thereafter abandoned or set aside. *Railroad Co.* v. *Whitney*, 132 U. S. 357, 10 Sup. Ct. 112; *Railway Co.* v. *Dunmeyer*, 113 U. S. 629, 5 Sup. Ct. 566; *Bardon* v. *Railroad*

*Co.,* 145 U. S. 535, 12 Sup. Ct. 856; *Railroad Co.* v. *Colburn,* 164 U. S. 383, 17 Sup. Ct. 98; *Whitney* v. *Taylor,* 158 U. S. 85, 15 Sup. Ct. 796. We do not think that these decisions apply to the act under which plaintiff claims. When the act of 1875 is construed as a whole, we believe that, as against the United States, the right-of-way is transferred, even when the land has been entered at the time the map is approved, and that, if such entry is subsequently abandoned or set aside, the grantee will enjoy an absolute easement in the land. The rights of the railroad company will be subject to all rights which have attached to the land before the filing and approval of the map of definite location. But, as against the United States, the grant is as effective in cases where the land has been entered as where it has not. Under any other view of the statute, the railroad company might be compelled to condemn successive rights of settlers, only to find that all its proceedings were futile, because in each case the settler's rights were, by cancellation or abandonment, destroyed. We think that it was the purpose of congress to make the grant operative as against the government, subject only to existing rights of settlers, and that the question whether a particular piece of land was within the terms of the grant, so far as the government was concerned, was not to depend upon the freedom of that land from settlement at the time the map was approved. Under this view of the statute, a railroad company could never be required to condemn any other than existing rights. When those should once be condemned, the destruction or abandonment thereof, followed by a new entry, would not force the grantee to assume anew the burden of condemning subsequent rights, and meeting with a similar experience, to take up again, perhaps, the Sisyphean task of toiling hopelessly for title, only to find each time that all its efforts had proved abortive. Nor are we without express authority on this point. *Hamilton* v. *Railway Co.,* (Idaho,) 28 Pac. Rep. 408. The decision of the court in that case, accurately stated in the syllabus, is as follows: "One

N. D. R.—40.

Wilkins filed declaratory statement November 7th, 1888, and relinquished the same October 5, 1889, on which day Daniel made homestead entry of the same tract, and on April 29, 1890, made cash entry of said tract, and on September 3, 1890, conveyed by warranty deed to Hamilton a portion of said tract. The railroad company claims right-of-way over tract conveyed to Hamilton, by reason of compliance with act of congress of March 3, 1875, and the approval of the plat by the secretary of the interior July 11, 1889. Hamilton claims damages because of company grading its roadbed through said conveyed tract. Held, that Wilkins' pre-emption filing did not exempt said land from the grant of right-of-way to the company, as he relinquished the same before perfecting the title; that there was no privity of estate between said Wilkins and Daniel; that patent to Daniel would take effect, by relation, October 5, 1889, the date of Daniel's homestead entry, and would not antedate the grant to the company." And in *Alexander* v. *Railroad Co.*, (Mo. Sup.) 40 S. W. Rep. 104, the same doctrine was announced and applied.

But it appears that the settlement of the defendant was made before the map of definite location was filed and approved, and defendant's counsel contends that for this reason his rights are superior to those of the plaintiff. He contends that, as against third persons, the decisive moment is the time of the approval of the map. On this point he is supported by authority. *Lilienthal* v. *Railway Co.*, 56 Fed. Rep. 701; *Larsen* v. *Navigation Co.*, 19 Or. 240, 23 Pac. Rep. 974; *Hamilton* v. *Railway Co.*, (Idaho) 28 Pac. Rep. 408; *Enoch* v. *Railway Co.*, 6 Wash. 393, 33 Pac. Rep. 966; *Railway Co.* v. *Van Cleave*, (Kan. Sup.) 33 Pac. Rep. 472; *Reidt* v. *Railway Co.*, (Wash.) 34 Pac. Rep. 150. The clear implication of section 4 is that settlers shall take subject to the right-of-way only when their rights attach after the approval of the map,—or, as the statute speaks of it, the "profile of its road." That section provides "that any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same

be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the secretary of the interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right-of-way shall pass shall be disposed of subject to such right-of-way." Counsel for the plaintiff contends that, in view of the fact that the road had been constructed and was in operation at the time the defendant settled on the land, the grant of the right-of-way attached before the interest of defendant under such settlement; and in this connection they cite the decision of Secretary Vilas in the Downey case, 8 Land Dec. Dep. Int. 115. The reasoning of the secretary seems to us destitute of force. Section 4 was not framed for special cases, as he seems to think, but was intended to apply to every case arising under the law. The implication that only after the approval of the profile of the road should land be disposed of subject to the right-of-way applies to every conceivable case which can arise under the act,— as well those where the road has been constructed as those where it has not. We believe that lands are disposed of, within the meaning of this section, whenever a pre-emption settlement thereon has been made. It is clear, from section 3, that the act contemplates that a settler who has only possessory rights shall be protected as much as one who has made final proof. It declares "that the legislature of the proper territory may provide for the manner in which private lands and possessory claims on the public lands of the United States may be condemned." The land in question was unoffered land, and the statute recognizes the fact that a settler thereon acquires rights by his mere settlement, though no entry thereof has yet been made. Rev. St. U. S. 1878, section 2265. Sections 3 and 4 treat such settler who has made his settlement prior to the approval of the profile of the road (which is nothing more than a map of definite location) as possessing superior rights, which must be considered by the rail-

road company, the same as any other private property. It is obvious that lands are disposed of, within the meaning of section 4, whenever a person has secured thereon such a possessory right as the railroad company is required to condemn under section 3. It has been held by the highest authority that settlement without entry confers upon the settler such a possessory right. *Railroad Co.* v. *Osborn*, 160 U. S. 103, 16 Sup. Ct. 219; *Railroad Co.* v. *Zeigler*, 167 U. S. 65, 17 Sup. Ct. 728. Of course, the right so initiated must follow up by the steps necessary to the acquisition of title.

It is insisted by counsel for plaintiff that the rights so obtained by the defendant were lost by his failure to make his entry within three months after his settlement. But section 2265, Rev. St. U. S., does not declare an absolute forfeiture, but only one in favor of another settler. It is clear from the language of the statute, and from the decisions of the Federal. Supreme Court, that a railroad company claiming a right-of-way under the act of 1875 is not within the class of persons who may take advantage of the failure of the settler to proceed with diligence in the filing of his declaratory statement. *Johnson* v. *Towsley*, 13 Wall. 72. Even the government itself cannot insist upon the forfeiture. The settler places himself in the power of a certain class of persons by his default. In all other respects his position is as unassailable as one who has strictly complied with law.

Nor is there anything in the contention of counsel for plaintiff that defendant has lost his priority by his failure to make final proof within 30 months after filing his declaratory statement, though he is required so to do by section 2267, Rev. St. U. S. He offered in time to make final proof, but his offer was rejected, owing to the fact that there was an uncanceled homestead entry against the land. While he was powerless to make final proof he was not in default. *Shepley* v. *Cowan*, 91 U. S. 338; *Weeks* v. *Bridgman*, 159 U. S. 541, 16 Sup. Ct. 72. On the 21st of November, 1892, he procured a relinquishment of the homestead entry, and changed his pre-emption to a homestead entry; and on July

21, 1893, he made final proof under his homestead entry, and thereafter he received his patent.   These facts make it apparent that the disposition of the land to the defendant, which antedated the approval by the secretary of the interior of plaintiff's profile of its road, has never been annulled, but that, on the contrary, the initial step has, so far as the plaintiff is concerned, been followed by all the necessary steps to transmute the original possessory right into a perfect legal title, which relates back to the settlement on February 23, 1883, as against the plaintiff's claim to a right-of-way over the land.   It is therefore our opinion that the plaintiff has no right-of-way over the defendant's land, and, as this was the decision of the lower court, that decision is, in all respects, affirmed.   All concur.

## ON APPLICATION FOR A REHEARING.

Counsel for defendant urges with great earnestness that, inasmuch as its road had been constructed over the land in controversy before the defendant had initiated his pre-emption rights by settlement, such rights are subject to plaintiff's title to the right-of-way in question.   There is much equity in this contention, and, were it not for the language of the statute, we would be strongly inclined to sustain it.   But the implication found in section 4, that the settler takes subject to the right-of-way only when his rights attach after the map of definite location has been filed and approved, when considered in the light of the provisions of section 3, which clearly show that mere possessory rights must be condemned by the railroad company, plainly point to only one conclusion, in our judgment; *i. e.* that when a settler has taken possession of land, with a view to making a pre-emption filing thereon, before the map of definite location of a railroad right-of-way thereover has been filed and approved, the railroad company must condemn the possessory right of the pre-emptor. The cases cited by counsel for defendant on this application are, in our opinion, easily distinguishable from the case before us for decision.   In *Washington & I. R. Co.* v. *Cœur D'Alene Ry. & Nav. Co.*, 160 U. S. 77, 16 Sup. Ct. 231, the plaintiff was seeking

to recover possession in ejectment of a right-of-way which it claimed that it had acquired under the provisions of the act of 1875,—the act which we are here construing. It is obvious that, under a familiar rule, the plaintiff, in order to recover, was obliged to establish its title to the right-of-way, as its right to possession depended entirely upon its title. It based its claim upon the fact that it had surveyed and staked the particular portion of the right-of-way in controversy the day before the defendant had surveyed and staked a right-of-way over the same land. But the court held that such previous survey gave the plaintiff no rights whatever, for the reason that at the time it was made the line of plaintiff's railroad, as described in its articles of incorporation, did not cover or include the land in controvery, or any part thereof. Besides, it appeared that the plaintiff had not at that time placed itself in the category of those entitled to the benefit of the act of 1875, as it had not yet filed with the secretary of the interior a certified copy of its articles of incorporation, and proof of its organization thereunder.

It was contended on behalf of the plaintiff that on subsequently amending its articles of incorporation to include a line of railroad over the land in dispute, and thereafter filing its articles of incorporation and proof of organization, it had a right to adopt the previous survey, and that such adoption related back to the date when it was made. But the court refused to take this view of the question; holding, "that, so far, as the conflicting rights of the parties to this controversy are concerned, the status of the plaintiff is the same as if its survey of October 28, 1886, had not been made." This brief review of this case lays bare the fact that the plaintiff therein was defeated in its action of ejectment because the act of survey on which it rested its right to possession was adjudged to be utterly without legal effect, for the reasons stated in the opinion,—reasons which have no bearing on the case at bar.

We have carefully studied the recent decision of the Federal Supreme Court in *Railroad Co.* v. *Smith*, (opinion filed May 31,

1898) 18 Sup. Ct. 794, to which our attention has been called by counsel for the defendant. That case is, in our judgment, so plainly distinguishable from the controversy before us, that we deem it unnecessary to do more than state our conclusion that it is not an authority for the defendant. Nor do we discover in the opinion any reasoning which, when fairly construed, militates in the least against our decision in this cause. The point on which our holding is adverse to the defendant is by no means so clear that we feel the very highest degree of confidence that we are right in our view. And it is therefore a great satisfaction to us to realize that our error, if any, can, and probably will, be corrected by a higher tribunal.

The application for a rehearing is denied. All concur.