(No. 5429. Decided August 14, 1905.)

JACOB SLAGHT, *Respondent,* v. NORTHERN PACIFIC RAILWAY COMPANY *et al., Appellants.*[1]

ADVERSE POSSESSION—AGAINST SETTLER·ON PUBLIC LANDS—RAILROADS.—STATUTE OF LIMITATIONS — WHEN BEGINS TO RUN — PATENT FROM GOVERNMENT. The statute of limitations does not being to run in favor of a railroad as to its right of way across public lands, occupied by a settler under the homestead laws, until the patent to the land has issued by the government, since it would interfere with the primary disposal of the soil.

RAILROADS — RIGHT OF WAY — CONGRESSIONAL GRANT — OCCUPIED LANDS — RIGHTS OF SETTLERS — NECESSITY OF CONDEMNATION. The grant of a railroad right of way across public lands, under Act Cong., March 3, 1875, does not attach to land occupied by a settler and subject to his settlement rights, until after condemnation thereof, as provided in § 3 of the act.

RAILROADS—RIGHT OF WAY—USE FOR PUBLIC PURPOSES—EJECTMENT—POSSESSORY ACTION AGAINST COMPANY. A possessory action can be maintained to recover possession of a railroad right of way, used and occupied by a railroad company for its roadbed for public purposes, where proceedings are stayed and the only effect of the judgment is to compel the company to make compensation for the property taken.

SAME — ESTOPPEL — EXCUSABLE DELAY IN BRINGING SUIT. The owner of premises is not estopped to bring ejectment against a railroad to recover possession of a railroad right of way by reason of several years delay, where the property was in litigation between him and the railroad company's grantors during said time, and the ejectment was commenced shortly after the final determination of such litigation.

Appeal from a judgment of the superior court for Whitman county, Chester F. Miller, J., entered July 13, 1904, upon findings in favor of the plaintiff, after a.trial on the merits before the court upon stipulated facts, in an action of ejectment. Affirmed.

*John M. Bunn (James B. Kerr,* of counsel), for appellants. The defendant acquired title under the Act of March 3, 1875.

1Reported in 81 Pac. 1062.

18 Stat. 482; *Jamestown etc. R. Co. v. Jones,* 177 U. S. 125, 20 Sup. Ct. 568, 44 L. Ed. 698; *Pennsylvania Min. & Imp. Co. v. Everett etc. R. Co.,* 29 Wash. 102, 69 Pac. 628; *Railroad Co. v. Baldwin,* 103 U. S. 426, 26 L. Ed. 578. Mere occupation, without filing the application, was not sufficient to defeat the grant. *Northern Pac. R. Co. v. Colburn,* 164 U. S. 383, 17 Sup. Ct. 98, 41 L. Ed. 479; Act. Cong., Sept. 4, 1841, 5 Stat. 453; Act. Cong., March 3, 1843, 5 Stat. 619; *Northern Pac. R. Co. v. De Lacey,* 174 U. S. 622, 19 Sup. Ct. 791, 43 L. Ed. 1111. The plaintiff's action is barred by the statute of limitations; he could maintain a possessory action prior to the issuance of a patent. *Brown v. Hartshorn,* 12 Okl. 121, 69 Pac. 1049; *Woodruff v. Wallace,* 3 Okl. 355, 41 Pac. 357; *French v. Cresswell,* 13 Ore. 418, 11 Pac. 62; *Burlington etc. R. Co. v. Johnson,* 38 Kan. 142, 16 Pac. 125. Or his possession could be protected by injunction. *Washington etc. R. Co. v. Osborn,* 160 U. S. 103, 16 Sup. Ct. 219, 40 L. Ed. 356. What he could grant by deed he could lose by lapse of time. U. S. R. S. § 2288. A possessory action will not lie. *New Orleans etc. R. Co. v. Jones,* 68 Ala. 48; *St. Julien v. Morgans etc. R. Co.,* 35 La. Ann. 924; *Louisville etc. R. Co. v. Berkey,* 136 Ind. 591, 36 N. E. 642; *Scarritt v. Kansas City etc. R. Co.,* 127 Mo. 298, 29 S. W. 1024; *St. Louis etc. R. Co. v. Foltz,* 52 Fed. 627; *Paterson etc. R. Co. v. Kamlah,* 42 N. J. Eq. 93, 6 Atl. 444; *Texas etc. R. Co. v. Jarrell,* 60 Tex. 267; *McAulay v. Western Vermont R. Co.,* 33 Vt. 311, 78 Am. Dec. 627; *Griffin v. Jacksonville etc. R. Co.,* 33 Fla. 606, 15 South. 338; *Taylor v. Chicago etc. R. Co.,* 63 Wis. 327, 24 N. W. 84; *Atlantic etc. R. Co. v. Barker,* 105 Ga. 534, 31 S. E. 452; *Fries v. Wheeling etc. R. Co.,* 56 Ohio St. 135, 46 N. E. 516; *Hooper v. Bridgewater,* 102 Mass. 512; *Chicago etc. R. Co. v. Englehart,* 57 Neb. 444, 77 N. W. 1092; *Northern Pac. R. Co. v. Smith,* 171 U. S. 260, 18 Sup. Ct. 794, 43 L. Ed. 157; *Roberts v. Northern Pac. R. Co.,* 158 U. S. 1, 15 Sup. Ct.

756, 39 L. Ed. 873; *United States v. Lynah,* 188 U. S. 445, 23 Sup. Ct. 349, 47 L. Ed. 539; *Northern Pac. R. Co. v. Murray,* 87 Fed. 648. And the tendency in this state is to support the above rule in the Federal courts. *Lewis v. Seattle,* 5 Wash. 741, 32 Pac. 794; *Kaufman v. Tacoma etc. R. Co.,* 11 Wash. 632, 40 Pac. 137; *Seattle etc. R. Co. v. Corbett,* 22 Wash. 189, 60 Pac. 127; *Northern Pac. R. Co. v. Ely,* 25 Wash. 384, 65 Pac. 555, 87 Am. St. 766, 54 L. R. A. 526.

*Thomas Neill (W. E. McCroskey* and *A. A. Wilson,* of counsel), for respondent.

RUDKIN, J.—In March, 1883, the plaintiff in this action established his residence on lots 10, 11, 14, and 15, of section 1, township 16 north, of range 45 east, of the Willamette Meridian, in Whitman county, and continued to reside thereon until the year 1897. On the 31st day of October, 1887, he made application at the proper land office to enter said lands under the homestead laws of the United States, alleging settlement on the 4th day of March, 1883. The Northern Pacific Railroad Company, having prior to said application selected said tracts as indemnity under the act of July 2, 1864, was notified of the plaintiff's application by the register and receiver of the local land office. The contest thus instituted was carried by appeal to the Secretary of the Interior, and resulted in a final decision in the plaintiff's favor on the 20th day of May, 1896. On the 20th day of April, 1897, a homestead patent issued to the the plaintiff.

During the year 1886 and the first half of the year 1887, the Spokane and Palouse Railway Company, a corporation organized and existing under the laws of the territory of Washington, constructed and completed a railroad upon and over lots 10 and 11, above described, at great expense; and ever since such construction, said railroad has been operated daily, carrying freight, passengers, and United States mail.

Since 1886, the Spokane and Palouse Railway Company and its successor in interest have claimed a right of way over said lots 10 and 11, for said railway, 100 feet wide on each side thereof.

It would be possible for the Northern Pacific Railway Company, successor in interest to the Spokane and Palouse Railway Company, to carry freight, passengers, and United States mail, over a right of way, across said described lands, not exceeding twenty-five feet in width, and a space one hundred feet square would permit of the erection of a depot at the town of Palouse; but great inconvenience would result to the citizens of Palouse and vicinity, and to said railway company, if these were all the facilities had for receiving and delivering freight, passengers, and mail. For the convenient, prompt, and expeditious handling of freight and the erection of warehouses and elevators for the storing of grain and wheat, it is necessary to have a right of way two hundred feet in width, across said land, as claimed by the railway company.

At the time said railway was surveyed and constructed, the plaintiff resided upon said lands, knew of its construction and of the expenditure of large sums of money in such construction. About the time the surveyors entered upon said lands, the plaintiff published a notice in the Palouse News, a newspaper printed and published in the vicinity of the land, forbidding all persons to trespass thereon, but this was the only objection made to the construction of the road. In the month of August, 1887, the Northern Pacific Railroad Company, claiming to be the owner of lots 10, 11, 14, and 15, above described, conveyed the same to one William L. Powers, and on the 14th day of September, 1887, Powers conveyed to the Spokane and Palouse Railway Company, a right of way two hundred feet wide across said lots 10 and 11, being the same right of way then claimed by the Spokane and Pa-

louse Railway Company, and now claimed by the Northern Pacific Railway Company.

On the 12th day of May, 1897, the Spokane and Palouse Railway Company, William L. Powers, and others, as successors in interest of Powers under the above deed of conveyance from the Northern Pacific Railroad Company, brought an action in the superior court of Whitman county for the purpose of having the plaintiff in this action declared a trustee of lots 10, 11, 14, and 15, above described, for the plaintiffs in said last mentioned action. A demurrer to the complaint in said action was sustained and a final judgment entered for the defendant therein, the plaintiff herein. Said judgment was thereafter affirmed by the supreme court of the State of Washington and by the supreme court of the United States.

No suit or action of any kind was commenced by this plaintiff to recover the possession of said right of way, or to enjoin or restrain the construction of said road or its maintenance over said right of way, or to recover damages for the taking or retention of said right of way, prior to the commencement of this action. This action was commenced shortly after the decision of the supreme court of the United States in the action above referred to. The summons was served on the Northern Pacific Railway Company on the 9th day of October, 1901, and the complaint filed on the 4th day of June, 1902. The Spokane and Palouse Railway Company conveyed the right of way in controversy to the Northern Pacific Railway Company on the 21st day of February, 1889. The foregoing facts, and others not deemed material, are set forth in the pleadings and agreed to by the parties.

This action was brought to recover the possession of the right of way, above referred to, across lots 10 and 11. The court below awarded to the plaintiff the possession of all of said right of way, except a strip of land twenty-five feet in width along which the road is constructed, and

a parcel of land one hundred feet square for a depot site, but stayed execution on the judgment for a period of ninety days, in order that the Northern Pacific Railway Company might have an opportunity to condemn and appropriate the remainder of the right of way. From the judgment so entered, the defendants appeal.

From the foregoing facts, the appellants make the following contentions: (1) That the Northern Pacific Railway Company, as successor in interest of the Spokane and Palouse Railway Company, has a right of way two hundred feet in width across said lots 10 and 11, by adverse possession, under the laws of the State of Washington; (2) that the Northern Pacific Railway Company, as successor in interest of the Spokane and Palouse Railway Company, has a right of way two hundred feet in width across said lots 10 and 11, under the act of Congress of March 3, 1875, granting rights of way over public lands to certain railway companies; and (3), that inasmuch as the Northern Pacific Railway Company is in possession of the right of way, using the same for public purposes, a possessory action to recover the land will not lie.

(1) The Northern Pacific Railway Company and its predecessor in interest have held the right of way in controversy openly, notoriously, adversely, and under color of title and claim of right for more than ten years prior to the commencement of this action, and, unless there was something in the nature of the respondent's title, or in the pending litigation, that prevented the operation of the state statute of limitations, the defense of adverse possession must prevail. The appellants contend that the respondent, by virtue of his settlement rights, might have enjoined the Spokane and Palouse Railway Company from entering upon the land or from interfering with his possession, or might have recovered damages for injury to his possession, in an action at law. This is no doubt true; but the respondent holds title under a patent from the United States, and he

contends that the state statute of limitations was dormant until patent issued. This presents a Federal question and we must look to the decisions of the supreme court of the United States for our guidance.

Under the laws of Missouri, a homesteader or preemptioner may maintain an action of ejectment from the date of his filing, to recover possession of the land embraced in his entry. By reason of this fact, the supreme court of that state held that the state statute of limitations commenced to run as soon as the right of entry accrued, notwithstanding the title was in the United States. The case was taken to the supreme court of the United States, and in *Gibson v. Chouteau,* 13 Wall. 92, the judgment was reversed, the court saying:

"But neither in a separate suit in a federal court, nor in answer to an action of ejectment in a state court, can the mere occupation of the demanded premises by plaintiffs or defendants, for the period prescribed by the statute of limitations of the state, be held to constitute a sufficient equity in their favor to control the legal title subsequently conveyed to others by the patent of the United States, without trenching upon the power of Congress in the disposition of the public lands. That power cannot be defeated or obstructed by any occupation of the premises before the issue of the patent, under state legislation, in whatever form or tribunal such occupation be asserted."

In a later case, *McIlhinney v. Ficke,* 61 Mo. 329, the supreme court of Missouri says:

"The Supreme Court of the United States in *Gibson v. Chouteau* (13 Wall. 92), have held, that although the patent has issued to the same person who entered the land, and although our statute allows the holder of the entry to get possession by ejectment, so soon as his entry is made, and although our statute of limitations begins to run from the date of the right of entry, yet as the legal title remained in the United States after the entry and up to the date of the patent, our statute of limitations had no effect as a

bar, because it interfered with the primary disposal of the soil."

The doctrine of the *Gibson* case is reaffirmed in *Redfield v. Parks,* 132 U. S. 239, 10 Sup. Ct. 83, where it is held that the doctrine of relation does not apply in such cases, and that the state statute of limitations does not commence to run, even upon issuance of final receipt after full payment. In the latter case, the patent did not issue for nineteen years after final receipt. This rule has been uniformly followed in the state courts. The plea of title by adverse possession cannot, therefore, prevail.

(2) Has the appellant railroad company a right of way under the act of March 3, 1875? This act undoubtedly grants a right of way over all public lands and the grant attaches immediately upon compliance with the requirements of the act. And, as held by the court in *Jamestown etc. R. Co. v. Jones,* 177 U. S. 125, 20 Sup. St. 568, a settler upon the land after the grant attaches takes it subject to the grant. We are of the opinion, however, that the grant does not attach to lands occupied by a settler and subject to his settlement rights, until after the condemnation provided for in section 3 of the act. It seems to have been the purpose of Congress to grant a full and complete right of way over lands occupied by a settler, as soon as the settler's rights were acquired by condemnation, and not to grant the right over occupied lands, independent of condemnation. If lands along the line of the road are occupied by a settler and his rights are not acquired by condemnation, and afterwards ripen into a patent from the government, he acquires the full legal title, free from any claim on the part of the company.

This precise question—in fact every question involved in this case—was before the supreme court of Colorado in *Denver etc. R. Co. v. Wilson,* 28 Colo. 6, 62 Pac. 843. In that case, Wilson, the plaintiff, filed upon the land over which the right of way was claimed, under the preemption

laws of the United States, on the 20th day of June, 1885. In July, 1887, after complying with all the requirements of the act of 1875, except to condemn the rights of Wilson, the railway company, defendant, obtained a deed to the right of way from one Bennet, who was holding the lands adversely to Wilson and contesting his rights before the department. The railway company immediately entered into possession of the right of way and built its road. On July 15, 1896, Wilson obtained a patent for the land from the United States, and soon thereafter, brought an action of ejectment, styled an action to recover possession of real property by the Colorado code, to recover possession of the right of way. The defendant, there as here, claimed a right of way under the act of 1875, under the state statute of limitations, and by estoppel. The court held, however, that the railway company acquired no rights over the pre-emption claim of the plaintiff without condemnation, and that the full legal title inured to him under the patent from the United States. In answer to the plea of the statute of limitations, the court said:

"The authorities are that, as between rival individual claimants of land acquired from the United States government, the statute of limitation does not begin to run in favor of an adverse claimant in possession, as against an entryman, until the latter, by a full compliance with the law, becomes entitled to a patent."

In *Larsen v. Oregon R. & Nav. Co.*, 19 Ore. 240, 23 Pac. 974, it was held that a railway company acquired no rights, under the act of 1875, as against a homestead claimant, without condemnation. In *Enoch v. Spokane Falls etc. R. Co.*, 6 Wash. 393, 33 Pac. 966, this court held that the grant under the act of 1875 "is not operative upon lands to which private rights have previously attached." See, also, *Red River etc. R. Co. v. Sture*, 32 Minn. 95, 20 N. W. 299; *Jamestown etc. R. Co. v. Jones*, 7 N. D. 619, 76 N. W. 227.

We think the decisions of the supreme court of the United
States in *Washington etc. R. Co. v. Osborn,* 160 U. S. 103,
16 Sup. Ct. 219, and *Spokane Falls etc. R. Co. v. Ziegler,*
167 U. S. 65, 17 Sup. Ct. 728, arising under the act of
1875, tend to sustain these conclusions. We are therefore
of opinion that the appellants have no rights, as against
the respondent, under the act of 1875.

(3) Can a possessory action be maintained to recover the
possession of a railroad right of way under the circumstances
disclosed by the record before us? In *Biles v. Tacoma etc.
R. Co.,* 5 Wash. 509, 32 Pac. 211, a similar case, a judg-
ment in ejectment, in favor of the plaintiff, was affirmed
by this court, but the right to maintain such an action was
not discussed. It appears from the dissenting opinion in
*Downs v. Seattle etc. R. Co.,* 5 Wash. 778, 32 Pac. 745,
33 Pac. 973, that the judgment in the *Biles* case was in
all respects similar to the judgment in this case, and the
procedure was approved by the dissenting judges. In
*Hathaway v. Yakima Water etc. Co.,* 14 Wash. 469, 44
Pac. 896, 53 Am. St. 847, the court enjoined the main-
tenance of a ditch across the land of the plaintiff, where
the right of way had been taken and the ditch constructed
without condemnation, but stayed proceedings for thirty
days to allow condemnation proceedings to be instituted.
This judgment was afterwards affirmed by this court, but
the question of procedure was not discussed. In *Kakeldy
v. Columbia etc. R. Co.,* 37 Wash. 675, 80 Pac. 205,
this court says:

"An owner of land, who stands by and without protest
sees a railroad constructed thereon, is estopped thereafter
to maintain an action in ejectment or a suit for injunc-
tion to prevent the operation of the road. His remedy is
limited to an action for damages for his compensation;"

citing *Roberts v. Northern Pac. R. Co.,* 158 U. S. 1, 15
Sup. Ct. 756; *Northern Pac. R. Co. v. Murray,* 87 Fed.

648, and other cases fully sustaining the rule there announced.

On the other hand, in *New York v. Pine,* 185 U. S. 93, 22 Sup. Ct. 592, the supreme court of the United States reversed a decree granting an unconditional injunction,

"  .   .   .   with instructions to set aside its decree and to enter one providing for an ascertainment, in the way courts of equity are accustomed to proceed, of the damages, if any, which the plaintiffs will suffer by the construction of .the dam and the appropriation of the water, and for which the defendant is legally responsible, a proposition upon which we express no opinion, and fixing a time within which the defendant will be required to pay such sum, and that upon the failure to make such payment an injunction will issue as prayed for; and, on the other hand, that upon payment ·a decree will be entered in favor of the defendant. If the plaintiffs shall prefer to have their damages assessed by a jury, leave may be given to dismiss the bill without prejudice to an action at law."

The authorities are divided on this question. If a judgment in ejectment at law, or decree of injunction in equity, would have the effect of stopping the operation of the railroad, or disabling it from discharging its duties to the public, there would be strong and controlling reasons why such judgment or decree should not be awarded. But, if proceedings are stayed as in this case, and the only effect of the judgment in ejectment is to compel the railway company to make compensation for the property taken, we see no valid objection to such proceeding, on the ground of public policy or otherwise.

While there has been apparent delay on the part of the respondent in the assertion of his rights, it must be remembered that the property was in litigation, from 1887 until 1901, between the respondent and those under whom the appellants claim. If the value of the land has increased or conditions changed since the right of way was taken, it is the misfortune of the appellants. This branch of the case involves no question of Federal law.

There is no error in the record, and the judgment is affirmed.

FULLERTON, CROW, and ROOT, JJ., concur.