WINSTON RIERSON v. THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY.

**No. 10360.**

1. INDIAN LANDS—*ceded by Great and Little Osage treaty of September 29, 1865, held "public lands" subject to appropriation for railroad right of way.* The lands which the Great and Little Osage Indians ceded to the United States by the second article of the treaty concluded September 29, 1865, are public lands, within the meaning of "An Act granting to railroads the right of way through the public lands of the United States," approved March 3, 1875; and where a railroad company, with a view of obtaining a right of way over such lands, made compliance with the requirements of the Act before a sale or disposal of the lands by the United States, it acquired a right of way for its railroad.

2. PRESUMPTION—*arises from Secretary of the Interior's decision that railroad company entitled to grant, that all preliminary steps had been taken.* Where the Secretary of the Interior has decided that a railway company is entitled to a grant, and has approved a map and profile presented on behalf of the company, it may be presumed that the preliminary steps necessary to such decision and approval have been taken.

Error from Greenwood District Court. C. W. Shinn, Judge. Opinion filed January 8, 1898. *Affirmed.*

*Hodson & Hodson,* for plaintiff in error.

*J. W. Gleed, C. Hamilton* and *John L. Hunt,* for defendant in error. *Gleed, Ware & Gleed* and *D. E. Palmer,* of counsel.

JOHNSTON, J. This was an action by Winston Rierson to recover from the St. Louis & San Francisco Railway Company a strip of land which had been used as a right of way for its railroad since the early part of the year 1880. The land over which the right of way was located was a part of that ceded to the United States by the Great and Little Osage Indians through the treaty concluded September 29, 1865, and proclaimed by the President January 21, 1867. With a view of purchasing the land from the United States, Rierson settled upon it in September, 1880, some time after the right of way was granted and the railroad was in operation over the land in question. On June 6, 1888, Rierson received from the United States a patent for the land settled upon, no exception being made of the easement for right of way, and he has been continuously in the possession of the land since that time, except of the part used as the right of way.

The St. Louis, Wichita & Western Railway Company was duly incorporated in 1879. In August and September of that year, it surveyed its road and located its right of way over the lands in controversy; and, in March, 1880, completed the construction of its railroad across the same. Prior to March 16, 1880, the Railway Company proceeded to obtain a right of way over the land, in accordance with the requirements of "An act granting to railroads the right of way

3—59 KAN.

through the public lands of the United States," approved March 3, 1875, by filing a copy of its articles of incorporation and due proofs of its organization thereunder, all of which were duly approved. Subsequently, and before June 1, 1888, the Company filed a map and profile of its road, and on the day last mentioned they were approved by the Secretary of the Interior. The Railway Company continued to operate its railroad until the transfer of the same together with all its property and franchises to its successor, the St. Louis & San Francisco Railway Company, which since that time has continuously operated the railroad.

The trial court found that the Railway Company acquired its right of way by the proceedings taken in 1880, and that Rierson took his title from the United States subject to the easement which the Company had previously acquired.

In our view a correct conclusion was reached. According to the finding of the trial court, the rights of the Railway Company were acquired before settlement was made on the land by the plaintiff or any rights therein were obtained by him. He insists that this, with other findings, is not supported by the testimony, but, as the case-made does not show that it contains all the evidence, we must accept the facts as stated in the findings.

There is a contention that the lands ceded are not public lands, within the meaning of the act under which the Railway Company claims to have acquired its rights, and that therefore no right of way was ever obtained by it. As will be observed, the lands were ceded to the United States to be surveyed and sold under the direction of the Commissioner of the General Land Office at a price not less than one dollar and twenty-five cents per acre, as other lands are surveyed and sold, under

1. Indian lands held public subject to right of way.

such rules and regulations as the Secretary of the Interior should from time to time prescribe. The proceeds of the sale, less the expenses incurred, were to be placed in the treasury of the United States to the credit of the Indians and were to be thereafter expended for purposes mentioned in the treaty. There was a provision that within six months after the ratification of the treaty the Indians should remove from the ceded lands and settle upon their diminished reservation. The Indians having surrendered the right of occupancy, and ceded their lands to the United States with power of sale and disposal, there can be no doubt that the General Government had power to grant a right of way over the lands. By the Act of March 3, 1875, it was enacted: "That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any State or Territory," etc. Supp. to Rev. Stat., 1891, Vol. 1, p. 91. Can the ceded lands be regarded as Public Lands within the meaning of this Act?

It has been held that "the words 'Public lands' are habitually used in our legislation to describe such as are subject to sale or other disposal under general laws." *Newhall v. Sanger*, 92 U. S. 763; *Bardon v. Rld.*, 145 U. S. 535. By the terms of the treaty, the ceded lands were to be sold by the United States as other public lands were sold; and, as they must be sold under general laws and regulations, they fall fairly within the definition of Public Lands given by the Supreme Court of the United States. See, also, *Roberts v. M. K. & T. Rly. Co.*, 43 Kan. 102. The Act of March 3, 1875, provides that its provisions shall not apply to lands reserved for sale; but here, in addition to the title held by the United States as original proprietor, specific authority was given to sell the lands as other public lands are sold. Provision was

made in the treaty for right of way to railroad companies over the land not ceded and which remained to the Indians; but no provision was made nor limitations placed upon the power of the United States as to granting a right of way over the lands which had been ceded. Being public lands, its follows that, upon compliance with the provisions of the Act of March 3, 1875, the Company would acquire a right of way. The court found that the Company had complied with the requirements of the Act, and if we could measure the sufficiency of the evidence from what is preserved in the record we would be compelled to hold that there was enough to sustain the finding.

Complaint is made that a copy of the map filed with the Secretary of the Interior was received in evidence without sufficient identification. It appears to be an exemplication of the original, which was filed in the Department of the Interior by the Railway Company, certified by the Commissioner of the General Land Office to be a literal copy of the original, and upon its face it appears to cover the land in controversy. Exemplications of this character are admitted in evidence with like effect as originals, when they are attested by the officers having custody of the originals. Gen. Stat. 1897, ch. 97, § 10. Attached to the original map and made a part of the same are the affidavits of the officers of the Company showing that the route surveyed was represented by the map, that it had been indorsed by the board of directors of the Company, and that it was filed for and in behalf of the Company in order to obtain the right of way under the above-mentioned act of Congress. The map shows, and the record recites, that it was filed and approved in the Department of the Interior on June 1, 1880.

Another objection to its reception is that there is

no indorsement upon the same showing that it was filed in the land office at Independence, Kansas, being the office for the district within which the land in question was situated. The important step in the proceeding was the approval of the Secretary of the Interior. His approval was a *quasi*-judicial act, and when his decision is made and approval given, it may fairly be presumed that the formalities to be observed and preceding steps to be taken by the Railway Company have been observed and taken. Aside from that, however, there is proof that the map was filed in the land office at Independence. An exemplification of a letter of the register of the land office at that place was introduced in evidence, showing that the maps of location of the railroad were filed in that office on April 27, 1880. It was a letter which accompanied the maps, and was addressed to the Commissioner of the General Land Office, and was at least competent for the purpose of showing that the map had been filed in the land office at Independence. The letter of the register of the land office at Wichita, to which objection is made, appears to have no bearing on the case; and, being immaterial, no prejudice resulted from its admission.

We find no substantial error in the proceedings, and, therefore, the judgment of the District Court will be affirmed.

*2. Preliminary steps presumed taken, when.*