UNITED STATES v. BLENDAUR.

(Circuit Court of Appeals, Ninth Circuit. March 1, 1904.)

No. 973.

1. PUBLIC LANDS—FOREST RESERVES—LANDS SUBJECT TO BE SET APART.
    The 15 townships of land in the Bitter Root Valley, Mont., formerly occupied by the Flathead Indians, which by Act June 5, 1872, c. 308, 17 Stat. 226, providing for the removal of the Indians therefrom, were made subject to sale, and to which the homestead laws were extended by Act Feb. 11, 1874, c. 25, 18 Stat. 15, became a part of the general public domain, and, as such, were subject to Act March 3, 1891, c. 561, 26 Stat. 1103 [U. S. Comp. St. 1901, p. 1537], authorizing the President, by proclamation, to set apart forest reservations in "public lands."

2. SAME—CONSTRUCTION OF STATUTE—MEANING OF WORDS "PUBLIC LANDS."
    The words "public lands" are not always used in the same sense in acts of Congress, and should be given such meaning in any act as comports with its purpose and intent.

In Error to the District Court of the United States for the District of Montana.

For opinion below, see 122 Fed. 703.

This action was instituted by the United States to recover from the defendant the sum of $28, the value of 20 trees alleged to have been wrongfully cut by him on certain lands situate in the Como Reserve, in the Missoula Land District, in the state of Montana. The defendant, in his answer, denies that plaintiff was the owner of the land upon which the trees were cut; denies all damages charged against him; and, for an affirmative defense, alleges that the lands described in the complaint are not, and since the 5th day of June, 1872, have not been, public lands, and that neither the President of the United States, nor any officer thereof, has the right, power, or authority to set apart as, or declare the lands mentioned in the complaint to be, a part of any forest reserve; that the said lands are embraced within the 15 townships above the Lo Lo Fork of the Bitter Root River, in the Bitter Root Valley, referred to in the act of Congress approved June 5, 1872, c. 308, 17 Stat. 226, as such 15 townships have been definitely fixed and determined by the survey and maps of the said Bitter Root Valley approved by the Department of the Interior; that on the 3d day of February, 1892, an order was transmitted by the Commissioner of the General Land Office to the register and receiver of the United States land office at Missoula, Mont., purporting to reserve from disposition, under the general laws of the United States, certain lands in the Bitter Root Valley, embracing the lands described in the complaint herein, and designating the said lands as the "Lake Como Forest Reserve," and that, save for the said order, no act was ever done or performed by the President of the United States, or by the Land Department, creating or purporting to

create any forest reserve embracing said lands; that on or about July 14, 1899, the Commissioner of the General Land Office addressed a letter to the receiver of the United States land office at Missoula, Mont., directing the said officer not to dispose of certain lands in the Bitter Root Valley embracing the lands mentioned in the complaint herein, and purporting to set apart and reserve the same, pending the determination of the advisability of including the same in the Bitter Root Forest Reserve, but defendant avers that no action has ever been taken by the President of the United States, or by the Land Department of the government, to embrace or include the same in the said Bitter Root Forest Reserve. Defendant further avers that he is, and at all times herein mentioned was, a citizen of the United States, over the age of 21 years, and that he has never entered any lands under the provisions of the homestead act, and that on the 15th day of July, 1899, he settled on the lands mentioned in the complaint herein with the intention at that time to enter the same and acquire title to the same under the provisions of the homestead laws of the United States; that, with a view to the perfection of his settlement upon the said lands, and to enable him to construct a house thereon and to establish his residence thereon, he cut down certain trees growing thereon, intending to use the logs which might be hewn therefrom to construct a residence for himself upon the said land, and that the said trees so cut down were used by the defendant on the said land in constructing his said residence, and that the trees so cut down are the trees referred to in the complaint herein as having been on the said land wrongfully and unlawfully cut down, and that the use of the same in the construction of his said residence constitutes the conversion and disposition of the same referred to in the complaint; and that the entry so as aforesaid made by the defendant upon the said lands for the purpose of making a settlement thereon, with a view to acquire title to the same under the homestead laws of the United States, constitutes the entry complained of in the complaint, and, by reason of the facts aforesaid, the defendant denies that his said entry was wrongful or unlawful, or that his cutting of the said timber was wrongful or unlawful, or that he converted the same. To this answer the plaintiff interposed a demurrer upon the grounds "that the affirmative allegations contained in said defendant's answer did not, nor did either or any of them, state facts sufficient to constitute a defense to the cause of action set out in plaintiff's complaint herein." The court below overruled this demurrer. The plaintiff declined to file any replication to the answer, and elected to stand upon its demurrer, whereupon the court ordered the complaint dismissed. From the judgment of dismissal the plaintiff sued out a writ of error to this court, assigning as error: "(1) The court erred in overruling the demurrer interposed by the plaintiff to the affirmative matter set up in defendant's answer. (2) The court erred in rendering judgment in said cause against said plaintiff and dismissing said action."

Carl Rasch, U. S. Atty., and Fred A. Maynard, Sp. Asst. U. S. Atty. E. E. Hershey and T. J. Walsh, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after making the foregoing statement, delivered the opinion of the court.

Did the court err in overruling the demurrer to the answer? Was the land described in the complaint subject to homestead entry on the 15th day of July, 1899, when defendant entered thereon for the purpose of making a settlement under the homestead law, as alleged in his answer, or had the land at that time or prior thereto been legally set apart and reserved as a forest reservation?

Section 24 of the act of March 3, 1891, reads as follows:

"That the President of the United States may, from time to time, set apart and reserve, in any state or territory having public land bearing forests, in

any part of the public lands wholly or in part covered with timber or under-growth, whether of commercial value or not, as public reservations, and the President shall, by public proclamation, declare the establishment of such reservations and the limits thereof." 26 Stat. 1103, c. 561 [U. S. Comp. St. 1901, p. 1537].

The contention of appellee is that the land in question could not be legally set aside as a part of a forest reservation, because the lands in the Bitter Root Valley above the Lo Lo Fork were not "public lands," but had been previously set apart for a special purpose, to wit, the right of homestead entry under the provisions of the act of June 5, 1872, and the act approved February 11, 1874, and the appropriation act of June 22, 1874, the respective provisions of which read as follows:

Act of June 5, 1872, c. 308, 17 Stat. 226:

"Section 1. That it shall be the duty of the President, as soon as practicable, to remove the Flathead Indians (whether of full or mixed bloods), and all other Indians connected with the said tribe, and recognized as members thereof, from Bitter Root Valley, in the territory of Montana, to the general reservation in said territory (commonly known as the Jocko Reservation), which by a treaty concluded at Hell Gate, in the Bitter Root Valley, July sixteenth, eighteen hundred and fifty-five, and ratified by the Senate March eighth, eighteen hundred and fifty-nine, between the United States and the confederated tribes of Flathead, Kootenai, and Pend d'Oreille Indians, was set apart and reserved for the use and occupation of said confederated tribes."

Act of February 11, 1874, c. 25, 18 Stat. 15:

"Section 1. The time of sale and payment of pre-empted lands in the Bitter Root Valley, in the territory of Montana, is hereby extended for the period of two years from the expiration of the time allotted in the act entitled 'An act to provide for the removal of the Flathead and other Indians from the Bitter Root Valley, in the territory of Montana,' approved June fifth, eighteen hundred and seventy-two.

"Sec. 2. That the benefit of the homestead act is hereby extended to all the settlers on said lands who may desire to take advantage of the same."

Appropriation act of June 22, 1874, c. 389, 18 Stat. 173:

"For the second of ten installments to be paid, under direction of the President, to the Flathead Indians removed from the Bitter Root Valley to the Jocko Reservation, in the territory of Montana, five thousand dollars: provided, that the proceeds of the sales of land in Bitter Root Valley, Montana Territory, referred to in the second section of the act of Congress approved June fifth, eighteen hundred and seventy-two, entitled 'An act to provide for the removal of the Flathead and other Indians from the Bitter Root Valley, in the territory of Montana,' shall be paid into the Treasury of the United States in the same manner that other moneys derived from the sale of other public lands are now paid in: and provided further, that in lieu of the amount provided to be set apart therefrom by the act of Congress of June fifth, eighteen hundred and seventy-two, hereinbefore referred to, there shall be annually appropriated out of any money in the Treasury of the United States not otherwise appropriated, the sum of five thousand dollars, for the period of ten years, to be expended under the direction of the President, in the manner deemed for the best good of the Indians who have been removed from Bitter Root Valley: and provided further, that no part of said sum shall be paid to any Indian of said tribe who shall not have settled upon the Jocko Reservation."

Lands to which a homestead claim may attach must necessarily be a part of the general public domain, and must be unappropriated lands not held back or reserved for any special or public purpose. It will

be admitted, for the purposes of this opinion, that prior to the order made on February 3, 1892 (set forth in defendant's answer), the lands in the Bitter Root Valley above the Lo Lo Fork were subject to homestead entry, and that the rights of parties who had entered in good faith for the purpose of making a settlement thereon could not be divested by said order. But the withdrawal of the lands for forestry purposes was not in violation of any of the provisions of the act of June 5, 1872. The lands were ceded by the Indians, and their sale was directed by said act. There was no reservation of the lands or of any interest therein to the use of the Indians—only an appropriation arising from the sale. That appropriation was satisfied by the act of June 22, 1874, from the general funds of the Treasury. The government had the power and could at any time thereafter reserve the lands for any public purpose. They were subject to reservation for public purposes, the same as other public lands. The contention of appellee that they were not public lands, because these words indicate only such lands belonging to the United States "as are subject to sale or other disposition under general laws" (Wilcox v. Jackson, 13 Pet. 498, 513, 10 L. Ed. 264; Leavenworth, L. & G. R. Co. v. United States, 92 U. S. 733, 23 L. Ed. 634; Newhall v. Sanger, 92 U. S. 761, 23 L. Ed. 769; Bardon v. R. R. Co., 145 U. S. 535, 12 Sup. Ct. 856, 36 L. Ed. 806; Mann v. Tacoma Land Co., 153 U. S. 273, 14 Sup. Ct. 820, 38 L. Ed. 714; Barker v. Harvey, 181 U. S. 481, 491, 21 Sup. Ct. 690, 45 L. Ed. 963), cannot be sustained. The words "public lands" are not always used in the same sense. Their true meaning and effect are to be determined by the context in which they are used, and it is the duty of the court not to give such a meaning to the words as would destroy the object and purpose of the law or lead to absurd results. There are many cases where the courts have been called upon to decide the meaning of these words. In United States v. Bisel, 8 Mont. 20, 30, 19 Pac. 251, the court, after referring to the decisions in Wilcox v. Jackson, Newhall v. Sanger, and other cases, said:

"There is no statutory definition of the words 'public lands,' and the meaning of them may vary somewhat in different statutes passed for different purposes, and they should be given such meaning in each as comports with the intention of Congress in their use."

See, also, Heydenfeldt v. Daney G. & S. M. Co., 10 Nev. 290, 314; Id., 93 U. S. 634, 640, 23 L. Ed. 995; Beecher v. Wetherby, 95 U. S. 517, 24 L. Ed. 440; Frost v. Wenie, 157 U. S. 46, 15 Sup. Ct. 532, 39 L. Ed. 614; Minnesota v. Hitchcock, 185 U. S. 373, 393, 22 Sup. Ct. 650, 46 L. Ed. 954; McFadden v. Mountain View M. & M. Co., 97 Fed. 670, 680, 38 C. C. A. 354; State v. Kennard (Neb.) 78 N. W. 282; Rierson v. St. Louis & S. F. Ry. Co. (Kan. Sup.) 51 Pac. 901.

The title to the land in question was, at the time of the passage of the act of March 3, 1891, in the government. The land was a part of the public domain, and was public land of the United States, within the true intent and meaning of those words, as used in section 24 of said act, and continued in that condition up to the time the orders were issued setting aside and reserving said land as a part of the forest reserve, and thereafter was not subject to homestead entry. Blendaur,

128 F.—58

therefore, was at the time he cut the trees in question a mere trespasser upon the land. His answer stated no defense to the action, and the demurrer interposed thereto should have been sustained.

The judgment of the District Court is reversed.