UNITED STATES v. MINIDOKA & S. W. R. CO. et al.

(Circuit Court of Appeals, Ninth Circuit.    September 5, 1911.)

No. 1,930.

1. Public Lands (§ 92*)—Railroad Right of Way—"Public Lands" Defined—Withdrawal Under Reclamation Act.

Public lands withdrawn from entry under Reclamation Act June 17, 1902, c. 1093, § 3, 32 Stat. 388 (U. S. Comp. St. Supp. 1909, p. 597), as lands susceptible of irrigation from the contemplated works, but which remain subject to homestead entry under specified conditions, and upon which such entries have been made by entrymen who are in possession but have not yet fulfilled the conditions to entitle them to patents, are still "public lands" within the meaning of Act March 3, 1875, c. 152, 18 Stat. 482 (U. S. Comp. St. 1901, p. 1568), granting to railroads right of way through public lands of the United States, and a railroad company by complying with the terms of that act may acquire right of way through such lands subject to the possessory rights of the entrymen, which rights in the right of way it must also acquire by contract under Rev. St. § 2288, as amended by Act March 3, 1891, c. 561, 26 Stat. 1097 (U. S. Comp. St. 1901, p. 1385), and Act March 3, 1905, c. 1424, 33 Stat. 991 (U. S. Comp. St. Supp. 1909, p. 537), which authorizes any homestead settler to transfer right of way through his claim by warranty against his own acts, or by condemnation.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 92.*

For other definitions, see Words and Phrases, vol. 6, pp. 5793–5795; vol. 8, p. 7772.]

2. Public Lands (§ 92*)—Railroad Right of Way—Acquisition Under Statute.

Under Act March 3, 1875, c. 152, § 4, 18 Stat. 483 (U. S. Comp. St. 1901, p. 1569), which provides that any railroad company desiring to secure right of way thereunder through public lands shall within 12 months after the location of any section of 20 miles of its road file with the register of the land office of the district a profile of its road, which, on its approval by the Secretary of the Interior, shall be noted upon the plats in said office, the filing and approval of such profile is an essential prerequisite to the acquisition of any such right of way, and is especially requisite and important where the lands are included in an irrigation and reclamation project, since the Secretary may withhold his approval except on conditions which will insure that the road will not interfere with such project.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 92.*]

3. Public Lands (§ 92*)—"Profile."

A "profile" within the meaning of Act March 3, 1875, c. 152, § 4, 18 Stat. 483 (U. S. Comp. St. 1901, p. 1569), which provides that any railroad company desiring to secure right of way thereunder through pub-

lic lands shall file with the register of the land office a profile of its road, etc., is the outline of a vertical section through a country or line of work, showing actual or projected elevations and hollows.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 92.*]

Appeal from the Circuit Court of the United States for the Central Division of the District of Idaho.

Suit in equity by the United States against the Minidoka & Southwestern Railroad Company and the Utah Construction Company. From an order denying in part a motion for a preliminary injunction, complainant appeals. Reversed.

See, also, 176 Fed. 762.

Action on the part of the United States to restrain the defendants from going upon certain reserved lands withdrawn for the purpose of irrigation and reclamation under the act of Congress of June 17, 1902 (32 Stat. 388), and cutting up said lands with embankments, cuts, fills, and borrow pits for a line of railroad, and from constructing a railroad along said line without the approval and in violation of the alleged rights of the complainant.

C. H. Lingenfelter, U. S. Atty., B. E. Stoutemyer, and S. L. Tipton, Asst. U. S. Atty.

P. L. Williams and D. Worth Clark, for appellees.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

MORROW, Circuit Judge. The question involved in this case is whether the defendant the Minidoka & Southwestern Railroad Company has acquired a right of way for a line of railroad over certain lands reserved and withdrawn from public entry for the purpose of reclamation and irrigation under the act of June 17, 1902 (32 Stat. 388). The act provides for the sale and disposal of public lands in certain western states, including the state of Idaho, and appropriating the receipts from such sale to the construction of irrigation works for the reclamation of arid lands. For the purpose of carrying out this project, the act authorizes the Secretary of the Interior to withdraw public lands from entry for two specific purposes: (1) Lands required for any irrigation works contemplated under the provisions of the act. (2) Lands believed to be susceptible of irrigation from said works. The Secretary of the Interior has designated withdrawals of the lands required for irrigation works as "withdrawals under the first form," and withdrawals of lands believed to be susceptible of irrigation from said works, as "withdrawals under the second form." Instruction of June 6, 1905 (33 Land Dec. Dept. Int. 607).

The lands withdrawn under the first form cannot be entered, selected, or located in any manner so long as they remain so withdrawn. Lands withdrawn under the second form can be entered only under the homestead laws, and subject to the provisions, limitations, charges, terms, and conditions of the reclamation act. Under the power conferred by this act, the Secretary of the Interior by order dated No-

vember 12, 1902, withdrew from entry the lands described in the bill of complaint as part of the Minidoka project in the state of Idaho. The withdrawal of these lands was under the second form, which does not exclude entries under the homestead laws, but such homestead entries are made subject to all provisions, limitations, charges, terms, and conditions of the act. These provisions, limitations, etc., may be briefly summarized as follows: (1) The entries are not subject to the commutation provisions of the homestead laws. (2) The Secretary of the Interior is required to limit the area per entry. The entry shall be not less than 40 nor more than 160 acres, and shall represent the acreage which in the opinion of the Secretary may be reasonably required for the support of a family upon the land in question. This area is designated by the Secretary as the "farm unit." (3) Before the entryman shall be entitled to a patent for the lands described in his entry, he must show that he has reclaimed at least one-half of the total irrigable area of his entry for agricultural purposes. (4) Before a patent will issue, he must also show that he has paid the entire apportioned water charges fixed by the Secretary of the Interior in not more than 10 annual payments. (5) No water right permanently attaches until all payments therefor are made. (6) A failure to make any two payments when due render the entry subject to cancellation, with a forfeiture of all rights under the act, as well as all money paid thereon. (7) Water service to not more than 160 acres of one owner. (8) Water service only to owners resident on or in the vicinity of the land.

The Minidoka project provides for the diversion of the waters of Snake river by gravity and by pumping for the irrigation and reclamation of certain arid lands lying north and south of the river in Lincoln and Cassia counties, in the state of Idaho. The lands involved in this case lie south of the river in Cassia county, and form part of the south side Minidoka pumping project, upon which the United States has expended a sum of money in excess of $1,300,000 in the construction of irrigation works consisting of a pumping plant, numerous canals, laterals, and irrigation ditches for the irrigation of such lands. The defendant railroad company has projected a line of road connecting with an existing line at the town of Burley, on the south side of Snake river, and running south from Burley to the town of Oakley, a distance of about 20 miles. For the distance of about six miles south from Burley the projected road transverses lands which have been entered as homesteads within the area of the South Side Minidoka pumping project. The line of road over these lands will, when constructed, cross three of the main canals and ten of the laterals constructed and operated by the reclamation service. The defendant railroad company claims to have acquired the right of way for its railroad over these lands under and by virtue of the act of March 3, 1875, entitled "An act granting to railroads the right of way through public lands of the United States," approved March 3, 1875 (18 Stat. 482), and by contracts with homestead entrymen (with two exceptions) granting to the railroad company the right to construct its railroad over and across said lands. With respect to the two exceptions for

which no contracts have been made, the railroad company represents that it will obtain such contracts before extending its line of road over said lands. Has the railroad company acquired a right of way under the act of March 3, 1875? A fundamental rule of construction for such a grant has long been established. This rule requires the courts to construe the grant strictly in favor of the public. Nothing passes but what is granted in clear and explicit terms. Sutherland, Stat. Const. § 548; Holyoke Co. v. Lyman, 15 Wall. 500, 511, 21 L. Ed. 133. The act grants a right of way through the "public lands of the United States."

[1] The first question is: Are these entered lands "public lands of the United States"? In Winona & St. Paul R. R. Co. v. Barney, 113 U. S. 618, 624, 625, 5 Sup. Ct. 606, 609 (28 L. Ed. 1109), the Supreme Court had before it a controversy respecting rights under grants to certain railroad companies. The court said with respect to the construction of these grants:

"The solution of these questions depends, of course, upon the construction given to the acts making the grants; and they are to receive such a construction as will carry out the intent of Congress, however difficult it might be to give full effect to the language used if the grants were by instruments of private conveyance. To ascertain that intent, we must look to the condition of the country when the acts were passed, as well as to the purpose declared on their face, and read all parts of them together."

In United States v. Blendaur, 128 Fed. 910, 913, 63 C. C. A. 636, 639, this court said:

"The words 'public lands' are not always used in the same sense. Their true meaning and effect are to be determined by the context in which they are used, and it is the duty of the court not to give such a meaning to the words as would destroy the object and purpose of the law or lead to absurd results."

If we look at the several provisions of this act, we find that it includes as "public lands," not only lands to which no claims or rights have attached, but specifically includes lands to which possessory claims have attached, for in section 3 it is provided that the Legislature of the proper territory may provide for the manner in which private lands and possessory claims on the public lands may be condemned.

It is further provided that:

"Where such provision shall not have been made, such condemnation may be made in accordance with section three of the act approved July 2, 1864 [Act July 2, 1864, c. 216, 13 Stat. 357]."

That is to say, the act grants the right of way through the public lands of the United States, and, if upon any of the public lands through which a right of way is required there is a possessory claim, the railroad company can proceed to acquire a right of way from that claim in the manner specified. But for the purpose of the act the mere possessory right of the settler does not remove the land from the legal classification as "public lands of the United States," and the homestead settler under the provisions of the reclamation act has certainly nothing more than a possessory right prior to the time when he shall have paid for the land and for the water charges as provided in the

act. In the present case none of the homestead entrymen have made final proof or received a final certificate or a patent for the land. Neither have they or any of them repaid the United States for any part or installment of the cost of construction of said reclamation project. These claims are therefore nothing more than possessory; and the lands to which they relate public lands of the United States.

But it is contended on the part of the United States that no right of way can be acquired by the railroad company over the lands included in the reclamation project under the act of March 3, 1875, for the reason that they had been previously withdrawn under the second form authorized by the reclamation act for the accomplishment of a governmental purpose authorized by law, and were excluded from railroad appropriation by section 5 of that act, which provides:

"This act shall not apply to any lands within the limits of any military, park, or Indian reservation, or other lands specially reserved from sale."

The contention is that lands withdrawn under the second form of the reclamation act are "specially reserved from sale." We cannot agree to this construction of the act. It seems to us to provide directly to the contrary. The title of the act is:

"An act appropriating the receipts from the sale and disposal of public lands in certain states and territories to the construction of irrigation works for the reclamation of arid lands."

One of the stipulations in the record of this case is that:

"All the lands under said Minidoka project and the extension thereof are arid in character and require irrigation to produce agricultural crops thereon, but are productive when irrigated."

Being arid lands, they are not salable in their natural condition, but a system of reclamation and irrigation is provided by the act to make the lands salable, and, being salable, they are offered for sale. They are not specially or otherwise reserved from sale, but are offered for sale under specified conditions. It follows that the act of March 3, 1875, "granting to railroads the right of way through the public lands of the United States," is applicable to these lands. But there is another statute, the counterpart of the Act of March 3, 1875, under which so much of the possessory right of the settler as may be required can be obtained by the railroad company. This statute is section 2288 of the Revised Statutes, as amended by section 3, Act March 3, 1891, c. 561, 26 Stat. 1097 (U. S. Comp. St. 1901, p. 1385), and Act March 3, 1905, c. 1424, 33 Stat. 991 (U. S. Comp. St. Supp. 1909, p. 537), which is as follows:

"Any bona fide settler under the pre-emption, homestead, or other settlement law shall have the right to transfer, by warranty against his own acts, any portion of his claim for church, cemetery, or school purposes, or for the right of way of railroads, telegraph, telephones, canals, reservoirs, or ditches for irrigation or drainage across it; and the transfer for such public purposes shall in no way vitiate the right to complete and perfect the title to his claim."

These two statutes taken together appear to meet the requirements of the situation, and to authorize the railroad company upon complying with certain conditions to acquire from both the government and

the settler a right of way which the government should not in justice to the settler grant without his consent, and which the settler could not convey without the permission of the government, since he can only "transfer by warranty against his own acts."

It appears from the record that the railroad company has acquired by contract the right of way for its railroad over all the lands held by the homestead entrymen except two, and, with respect to these two, it is conceded that the railroad company must obtain such an agreement with the entrymen before extending its line of road over their lands. The right of way also passes through a section of school lands (section 36), which has passed to the state of Idaho. With respect to these lands the railroad company holds contracts for a right of way with parties to whom the state of Idaho has conveyed or contracted to convey said lands.

[2] This brings us to the consideration of the conditions under which a railroad company may obtain a grant of a right of way over the public lands of the United States. These conditions are specified in the act of March 3, 1875. Section 1 provides:

"That the right of way through the public lands of the United States is hereby granted to any railroad company * * * which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization, * * * to the extent of one hundred feet on each side of the central line of said road."

Section 4 provides:

"That any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: Provided, that if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road."

The defendant railroad in this case filed with the Secretary of the Interior a copy of its articles of incorporation and due proofs of its organization under the same, but has filed no profile map of its road with the register of the land office where the land is located, and no such profile map has been filed with or approved by the Secretary of the Interior. It is contended by the railroad company that, having filed with the Secretary of the Interior a copy of its articles of incorporation and due proofs of its organization under the same, it has placed itself in a position to become a grantee under the act, and having staked and laid out its road across the lands in question, and having established and partly constructed a grade, a right of way has been secured under the act, notwithstanding no profile of the road has been filed with or approved by the Secretary of the Interior. We cannot assent to this interpretation of the requirements of the statute, and we do not understand that the case of the Jamestown & Northern R. Co. v. Jones, 177 U. S. 125, 20 Sup. Ct. 568, 44 L. Ed.

698, sustains such an interpretation. In that case the railroad company had filed with the Secretary of the Interior its articles of incorporation and due proofs of its organization under the same on January 26, 1883, and had filed its profile map or map of definite location on March 13, 1883, and it had been approved by the Secretary of the Interior; but the road had been surveyed in 1881 and constructed upon this line of survey in 1882. The defendant in error who was a settler upon the land through which the railroad had been constructed had filed a declaratory statement in the land office on June 5, 1883, alleging settlement of the land on March 3, 1883. The settlement of the defendant in error was 10 days earlier than the filing of the profile map by the railroad company, but all the other acts required by the statute and performed by the railroad company were prior to such settlement and the railroad company had been engaged in operating its line of railroad on the right of way over the land for more than a year, and the question was whether, the railroad company having complied with the statute in all other respects prior to the settlement of the defendant in error upon the land, the grant of the right of way took effect upon the construction of the road or upon the filing of the profile map. The Supreme Court held that the right of way was definitely located by the actual construction of the road and determined the rights of the parties upon that fact.

The subsequent case of Minneapolis, St. Paul, etc., Ry. Co. v. Doughty, 208 U. S. 251, 257, 28 Sup. Ct. 291, 52 L. Ed. 474, was also a controversy between the railroad company and a settler as to priority of right. The railroad company contended that, when it had located its line of road and had commenced proceedings under the act to acquire the title to the right of way, it was first in right to any unoccupied public land. This claim was denied and full effect given by the court to the requirement of section 4 of the act when it says that:

"To secure a right of way three things are necessary: (1) location of the road; (2) filing a profile of it in the local land office; and, (3) the approval thereof by the Secretary of the Interior, to be noted upon the plats in the local office."

But there is no such question of priority between the railroad company and the settler in this case. The question is, What right has the railroad company acquired from the United States? The road has not been constructed and is not in operation over its projected right of way, and not having filed its profile map with the register of the land district, and such map not having been approved by the Secretary of the Interior, the railroad company has acquired no right of way under the act of March 3, 1875. Red River & Lake of the Woods R. Co. v. Sture, 32 Minn. 95, 95 N. W. 229; Enoch v. Spokane Falls, etc., Ry. Co., 6 Wash. 393, 397, 33 Pac. 966.

In the case of the Spokane Falls & N. Ry. Co. v. Ziegler, 61 Fed. 392, 9 C. C. A. 548, this court, referring to the act of March 3, 1875, said:

"The act therefore did not grant a right of way presently, but entitled any company to obtain the right of way upon performing certain conditions,

190 F.—32

and its right attached upon filing a profile map of its road, as provided in section 4. It will be observed that the provision of section 4 is that, after filing the profile of the road, all lands over which the right of way shall pass shall be disposed of subject to such right of way. Lands, therefore, which had been disposed of theretofore, were exempt."

This case was taken to the Supreme Court, and there affirmed. Spokane Falls & N. Ry. Co. v. Ziegler, 167 U. S. 65, 17 Sup. Ct. 728, 42 L. Ed. 79. The authority of these cases disposes of the construction sought to be placed upon the act by the appellees.

The requirement of the statute that the railroad company shall file with the register and receiver the profile of its road and this profile shall be approved by the Secretary of the Interior before any right attaches is an important and far-reaching provision in view of the general authority conferred upon the Secretary of the Interior by the various acts of Congress relating to the public lands and particularly by section 441 of the Revised Statutes (U. S. Comp. St. 1901, p. 252), wherein he is charged with the supervision of the public business relating to public lands. The requirement in the Sundry civil appropriation act (Act Aug. 30, 1890, c. 837, 26 Stat. 391 [U. S. Comp. St. 1901, p. 1570]) "that all patents for lands hereafter taken out under any of the laws of the United States or on entries or claims validated by this act west of the one hundredth meridian, it shall be expressed that there is reserved from the lands in said patent described, a right of way thereon for ditches or canals constructed by the authority of the United States," and the provisions of the reclamation act wherein he is "authorized and directed, among other things, to make examinations and surveys for, and to locate and construct," as in the act provided, "irrigation works for the storage, diversion and development of waters" for the irrigation and reclamation of arid lands.

[3] It is to be observed that the map required to be filed with the register of the land office and approved by the Secretary of the Interior by the act of March 3, 1875, is a profile of the road. This is something more than an alignment map or a map of definite location. A "profile" is "the outline of a vertical section through a country or line of work, showing actual or projected elevations and hollows." Standard Dictionary. "A drawing exhibiting a vertical section of the ground along a surveyed line, or graded work, as of a railway, showing elevations, depressions, grades," etc. Webster's In. Dictionary. "A vertical section through a work or a section of country, to show the elevations or depressions." Century Dictionary.

With a map of this character before the Secretary of Interior showing the contour of the projected line of railroad through the public lands included in an irrigation and reclamation project, he can determine whether the construction of such a road would interfere with the project. He can determine, also, whether suitable provision has been made for the crossing of canals and other waterways, and, if not, what provision is required to preserve the work of the reclamation service from encroachment and impairment. All this is clearly included in the authority of the Secretary to approve or disapprove the profile of the road. In this case the Circuit Court in its decree denied

the prayer of the complaint for an injunction restraining the defendants from constructing its road across the lands of the reclamation project, except as to the crossings over the several canals and laterals constructed by the United States. As to these crossings the court imposed certain conditions. The conditions appear to have had the approval of the reclamation service, but as it seems without the waiver of any right under the statute on the part of the United States; that is to say, the United States did not waive its contention that, before the defendant railroad company could have a right of way through its public lands, its profile map must have received the approval of the Secretary of the Interior, and have the consent or agreement of all the settlers, or the legal title acquired by condemnation or other proceedings to construct a road over their lands. In this view we concur. We think the approval of the conditions upon which the railroad company may have a right of way through the lands of an irrigation project is imposed by the statute on the Secretary of the Interior as a judicial act to be evidenced by his approval or disapproval of the profile map. We are of the opinion, also, that the railroad company must have the consent or agreement of all the settlers or the legal title acquired by condemnation or other proceedings to entitle the railroad company to construct a road over their lands.

The decree of the Circuit Court is accordingly reversed, with instructions to grant the injunction prayed for in the complaint, to continue until such time as the court shall be advised that the railroad has the consent of both the United States and the settlers through whose lands the projected road will pass that the road may be constructed; the evidence that the United States consents to the construction of the road being the approval of a profile map of the road by the Secretary of the Interior, and the evidence that the settlers consent to the construction of the road being an agreement or conveyance of the right of way by the settlers. In the event that such agreement or conveyance cannot be had, then the title of the company to a right of way may be evidenced by a title secured according to law under condemnation or other proceedings.