## TAGGART v. GREAT NORTHERN RY. CO.

(District Court, E. D. Washington, N. D.   November 25, 1912.)

No. 1,542.

1. PUBLIC LANDS (§ 92*)—GRANTS TO RAILROADS—FILING MAPS—"PROFILE"—"OUTLINE."

Under Act Cong. March 3, 1875, c. 152, § 1, 18 Stat. 482 (U. S. Comp. St. 1901, p. 1568), granting a right of way through public lands of the United States to any duly authorized railroad company which shall file with the Secretary of the Interior a copy of its articles of incorporation and due proof of its organization, and section 4, providing that any such company, desiring to secure the benefits of that act, shall within 12 months after the location of any section of 20 miles of its road, or if upon unsurveyed lands, within 12 months after their survey, file with the register of the land office a profile of its road, and that upon approval thereof by the Secretary of the Interior it shall be noted upon the plats in such office, and that thereafter all lands over which such right of way shall pass shall be disposed of subject to such right of way, a railroad corporation, which had duly filed its articles of incorporation and proof of its organization, sufficiently complied with section 4 by filing maps showing the definite location of its line of railroad as surveyed and located through the public lands, without filing a profile showing the elevations and grades of the proposed road, since, while technically "profile" means a side or sectional elevation, or a drawing showing a vertical section of the ground along a surveyed line or graded work, it also means an outline or contour, and "outline" means the line which marks the outer limits of an object or figure, an exterior line or edge, contour, and Congress must have intended something more than a mere side or sectional elevation, which would convey little or no information to the government or prospective settlers, especially as the Secretary of the Interior for nearly 40 years has construed the term "profile" as meaning a map of definite location or a map of alignment.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 276-282; Dec. Dig. § 92.*]

2. STATUTES (§ 219*)—CONSTRUCTION BY ADMINISTRATIVE OFFICER—FORCE.

The construction placed upon an act of Congress by the officer charged with its administration, acquiesced in by all departments of the government for nearly 40 years, should be accepted by the courts.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 296, 297; Dec. Dig. § 219.*]

3. PUBLIC LANDS (§ 92*)—GRANTS TO RAILROADS—FORFEITURE.

Under Act Cong. March 3, 1875, c. 152, § 1, 18 Stat. 482 (U. S. Comp. St. 1901, p. 1568) granting to railroad companies the right of way through the public lands of the United States, and section 4, providing that any such company, desiring to secure the benefits of that act, shall file with the register of the land office a profile of its road, that upon approval thereof by the Secretary of Interior it shall be noted upon the plats in such office, and that thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way, but that, if any section of such road shall not be completed within five years after its location, the rights therein granted shall be forfeited as to such un-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

completed section, upon the filing and approval of such profile or map, the title of the railroad company thus acquired could be divested only by forfeiture declared by the government for breach of condition, or by the voluntary act of the company itself.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 276–282; Dec. Dig. § 92.*]

4. PUBLIC LANDS (§ 92*)—GRANTS TO RAILROADS—FORFEITURE.

Under Act Cong. March 3, 1875, c. 152, § 1, 18 Stat. 482 (U. S. Comp. St. 1901, p. 1568), granting to railroad companies a right of way through all public lands of the United States, and section 4, requiring such a company to file with the register of the land office a profile of its road, and providing that upon approval thereof by the Secretary of Interior it shall be noted upon the plats in such office, that thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way, but that, if any section of the road shall not be completed within five years after the location of such section, the rights therein granted shall be forfeited as to such uncompleted section, where a railroad company filed maps showing the location of its line of railway, which were duly approved, and subsequently revised the survey and location of the road, and filed new maps, showing a deviation in the central line of the road not exceeding 20 feet, which were approved by the Secretary upon its executing a relinquishment of its rights to the right of way shown on the original maps, excepting such part of such right of way as was situated within the limits of the right of way shown upon the revised maps, this change in its located line was not a waiver or forfeiture of its pre-existing rights, as the Secretary, in demanding a relinquishment only of the overlap outside the exterior limits of the two located lines, acted within his authority.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 276–282; Dec. Dig. § 92.*]

In Equity. Suit by George H. Taggart against the Great Northern Railway Company. Temporary injunction denied, and bill dismissed.

France & Helsell, of Seattle, Wash., for complainant.

F. V. Brown, of Seattle, Wash., and Charles S. Albert and Thomas Balmer, both of Spokane, Wash., for defendant.

RUDKIN, District Judge. [1] This is a controversy between a railway company and a settler over a right of way through certain lands which were heretofore public lands of the United States. The railway company claims its right of way under the Act of Congress of March 3, 1875 (18 Stat. p. 482, c. 152), sections 1 and 4 of which read as follows:

"Section 1. Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad; also ground adjacent to such right of way for station buildings, depots, machine shops, sidetracks, turn-outs and water stations, not to exceed in amount twenty acres for each station, to the extent of one station to each ten miles of its road."

"Sec. 4. That any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: Provided, that if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road."

The complainant, on the other hand, claims title under a patent from the United States, issued pursuant to the homestead laws. The case has been submitted to the court on the application for a temporary restraining order and for a final decree upon the merits upon an agreed statement of facts. Omitting jurisdictional and other facts not deemed material, the agreed case is this:

During the year 1906 the Washington & Great Northern Railway Company, a corporation organized and existing under and by virtue of the laws of the state of Washington, and authorized to locate and construct lines of railroad within the state, surveyed and located a line of railway from Wenatchee in a northerly direction along the west bank of the Columbia river to the mouth of the Okanogan river, and thence northerly to the international boundary line between the United States and the Dominion of Canada. The line of road as thus surveyed and located crossed lot 4 of section 13, township 28 N., of range 23 E., W. M., in a northerly and southerly direction. The lot thus described is the lot in controversy here, and was at that time unoccupied public land of the United States, and so remained until the 17th day of September, 1907. The line of road as thus surveyed and located by the Washington & Great Northern Railway Company was adopted by resolution of its board of directors as the definite location of its line of railway, and the railway company, having filed with the Secretary of the Interior of the United States a copy of its articles of incorporation and due proofs of its organization under the same, on the 2d day of January, 1907, filed in the United States land office at Waterville, Wash., maps showing the definite location of its line of railway as surveyed and located through the public lands of the United States, a copy of which maps is attached to the agreed statement. The maps thus filed were duly approved by the Secretary of the Interior on the 23d day of March, 1908, and were returned to the local land office, where the proper notations were made upon the plats, showing the located line across the public lands of the United States. In the month of July, 1907, the Washington & Great Northern Railway Company conveyed to the defendant, the Great Northern Railway Company, all its right, title, and interest in and to the right of way thus located and acquired, and the Great Northern Railway Company has since been and is now the owner of the same.

The Great Northern Railway Company filed with the Secretary of the Interior a copy of its articles of incorporation and due proofs of its organization under the same, and during the years 1908 and 1909

revised the survey and location of the road as theretofore made by its predecessor in interest, and on the 31st day of July, 1909, filed with the register and receiver of the United States land office at Waterville maps of such revision and of such amended definite location. A copy of this amended map is attached to the agreed statement and made a part thereof. The difference between the central line of the road as shown on the original maps and the central line of the road as shown on the amended map does not exceed 20 feet at any point where the lines cross lot 4, but at other places the variation is as much as 200 feet. On the 12th day of January, 1912, the local land office at Waterville, Wash., by direction of the Commissioner of the General Land Office, called the attention of the Great Northern Railway Company to the fact that its amended map of definite location was not accompanied by a relinquishment under seal of all rights under the original approval of the maps filed by the Washington & Great Northern Railway Company as to the portions thereof amended by the map filed by the Great Northern Railway Company, as required by section 19 of the circular of the General Land Office, issued on May 21, 1909, which reads as follows:

"When the railroad is constructed, an affidavit of the engineer and certificate of the president must be filed in the local office, in duplicate, for transmission to the General Land Office. No new map will be required except in case of deviations from the right of way previously approved, whether before or after construction, when there must be filed new maps and field notes in full, as herein provided, bearing proper forms, changed to agree with the facts in the case. The map must show clearly the portions amended, or bear a statement describing them, and the location must be described in the forms as the amended survey and amended definite location. In such case the company must file a relinquishment, under seal, of all rights under the former approval as to the portions amended, said relinquishment to take effect when the map of amended definite location is approved by the Secretary of the Interior."

Thereafter, on the 6th day of February, 1912, the Great Northern Railway Company released and relinquished to the United States all its right, title, and interest in and to the right of way pertaining to the line of railway as shown upon the maps filed by its predecessor and approved by the Secretary of the Interior—

"excepting and excluding, however, any and all of such right of way that is or may be situated within the limits of the right of way pertaining to the revised and relocated line of such company's railway shown upon the maps thereof filed in the United States district land office at Waterville, Washington, on the 31st day of July, 1909."

The relinquishment expressly provided that it should not take effect until the revised and amended map of definite location was approved by the Secretary of the Interior. The amended map thus filed was formally approved by the Secretary on the 13th day of July, 1912. Neither the Great Northern Railway Company nor its predecessor in interest filed a profile showing the elevations and grades of the proposed road across the public lands of the United States and was never requested so to do until the 17th day of November, 1910. On the latter date the register and receiver of the land office at Waterville, by direction of the Secretary of the Interior, notified the defendant that, since the line of its railway as described in the map of

amended definite location, crossed certain lands suitable for power sites, which had been temporarily withdrawn from entry and sale, the company would be required to file a profile showing the elevations and depressions at which the line of railway crossed such lands, and on the 4th day of May, 1911, pursuant to this request, the company did file a profile in the United States land office at Waterville, showing the elevations and depressions of its entire line from the crossing of the Okanogan river to the junction with the main line near Wenatchee. It is further stipulated that at all times since the 4th day of November, 1898, the regulations promulgated by the General Land Office of the United States, and approved by the Secretary of the Interior, under the Act of Congress of March 3, 1875, supra, contained the following:

"The word 'profile,' as used in this act, is understood to intend a map of alignment. All such maps and plats of station houses are required by the act to be filed with the register of the land office for the district where the land is located. If located in more than one district, duplicate maps and field notes need be filed in but one district, and single sets in the others. The maps must be drawn on tracing linen, in duplicate, and must be strictly conformable to the field notes of the survey of the line of route or of station grounds."

Such is the claim of the railroad company.

The complainant, on the other hand, made entry of lot 4, above described, together with other lands, on the 17th day of September, 1907, under the homestead laws of the United States, and received patent therefor on the 13th day of February, 1912, after a full compliance with the homestead laws. The patent made no reservation of any railroad right of way.

The railroad company is now about to enter upon the strip of land 180 feet in width, included in both the original and amended maps of definite location across lot 4, and the complainant instituted this suit to restrain it from so doing. It will be seen from the foregoing statement that the railway company is at least first in point of time, but the complainant claims that his rights are superior to those of the company for two reasons: First, because of the failure of the railroad company to file a *profile* of its road with the register of the land office as required by law; and, second, because any rights acquired under the original location were forfeited or abandoned by filing the map of amended location.

I am not convinced that either of these contentions is sound. Technically speaking, the term "profile" means "a side or sectional elevation"; "a drawing showing a vertical section of the ground along a surveyed line or graded work"; but it also means "an outline or contour"; and the term "outline" means "the line which marks the outer limits of an object or figure; an exterior line or edge; contour." Webster's International Dictionary, titles, "Profile" and "Outline."

It is very evident that Congress intended something more than a mere side or sectional elevation of the railroad, for such a map or profile would convey little or no information to either the government or prospective settlers. It would not show the location of the railroad upon the ground, or describe the lands taken, and could in no event show the station houses. Furthermore, for a period of nearly 40

years the Secretary of the Interior, who is charged with the administration of this law, has construed the term "profile" to mean a map of definite location, or a map of alignment. Circular of January 13, 1888 (12 Land Dec. Dept. Int. 423); Circular of November 4, 1898 (27 Land Dec. Dept. Int. 663).

[2] This construction of the law by the officer charged with its administration has been acquiesced in by all departments of the government for so long a period that it should now be accepted by the courts. United States v. Burlington R. Co., 98 U. S. 334, 25 L. Ed. 198; Hewitt v. Schultz, 180 U. S. 139, 21 Sup. Ct. 309, 45 L. Ed. 463.

In the recent case of United States v. Minidoka & S. W. R. Co., cited by the complainant from the Circuit Court of Appeals for this circuit (190 Fed. 491, 111 C. C. A. 323), the court, in the course of its opinion, said:

"The defendant railroad in this case filed with the Secretary of the Interior a copy of its articles of incorporation and due proofs of its organization under the same, but has filed no profile map of its road with the register of the land office where the land is located, and no such profile map has been filed with or approved by the Secretary of the Interior."

I take it from this that no map of any kind was filed in that case, and that the court did not have before it the validity or sufficiency of the regulations promulgated by the Secretary of the Interior or of a map filed in compliance therewith. If it had, I doubt very much whether it would have declared invalid regulations and maps, the validity of which have been recognized and acquiesced in for so long a period; for later in its opinion the court referred to the general authority conferred upon the Secretary of the Interior by the various acts of Congress relating to the public lands, and said:

"All this is clearly included in the authority of the Secretary to approve or disapprove the profile of the road. * * * "

And:

"We think the approval of the conditions upon which the railroad company may have a right of way through the lands of an irrigation project is imposed by the statute on the Secretary of the Interior as a judicial act, to be evidenced by his approval or disapproval of the profile map."

Again, in the recent case of Stalker v. Oregon Short Line, 225 U. S. 142, 32 Sup. Ct. 636, 56 L. Ed. 1027, the Supreme Court uses indiscriminately such expressions as "map of location," "map showing the termini of such portion and its route over the public lands," "map of alignment," etc.

[3] For these reasons, I am of opinion that the profile or map filed with the Secretary of the Interior by the predecessor in interest of the present defendant was sufficient in law and vested title to the right of way in the defendant company. And if title vested in the defendant company upon the approval of the map by the Secretary of the Interior, and if that approval related back to the time of filing the original map of alignment (Stalker v. Oregon Short Line, supra), the title thus acquired could only be divested in one of two ways: First, by a forfeiture declared by the government for breach of condition; and, second, by the voluntary act of the company itself.

[4] No forfeiture has been declared by the government, and the act of the company in making so slight a change in its located line, should not be construed as a waiver or forfeiture of pre-existing rights, contrary to the expressed intentions of both the government and its grantee. In demanding the relinquishment, the Secretary of the Interior recognized the fact that title had already vested in the company; and he required only a relinquishment of the overlap outside the exterior limits of the two located lines. In so doing, he, in my opinion, acted within his authority. The defendant is therefore claiming only what the Congress has granted to it, and what the Congress has a right to grant; and, if so, the complainant has no just ground for complaint.

The temporary injunction must therefore be denied, and the bill dismissed; and it is so ordered. Let judgment be entered accordingly.