UNITED STATES v. HAVENOR.

(District Court, D. Idaho, E. D.　November 10, 1913.)

1. PUBLIC LANDS (§ 30*)—RIGHT TO PURCHASE—DEPUTY MINERAL SURVEYOR—"EMPLOYÉ IN GENERAL LAND OFFICE."

A deputy mineral surveyor is an officer or "employé of the General Land Office," within Rev. St. § 452 (U. S. Comp. St. 1901, p. 257), providing that officers, clerks, and employés in the General Land Office are prohibited from directly or indirectly purchasing or becoming interested in the purchase of any public land of the United States, etc.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 48–50; Dec. Dig. § 30.*]

2. PUBLIC LANDS (§ 30*)—WHAT CONSTITUTES—POCATELLO TOWNSITE.

The Pocatello townsite in 1888 was a part of the Ft. Hall Indian Reservation, which on May 27, 1887, was relinquished to the United States by treaty which was ratified by Act Cong. Sept. 1, 1888, c. 936, 25 Stat. 452, which also provided for the sale and distribution of lots and blocks in the site. Section 7 provided that the Secretary of the Interior should make needful rules and regulations necessary to carry the act into effect; the funds to be derived therefrom after deducting expenses of surveying, appraisal, and sale to be deposited in the United States treasury for the benefit of the Indians. *Held*, that lots unsold in such townsite and subject to entry were "public lands," within Rev. St. § 452 (U. S. Comp. St. 1901, p. 257), prohibiting officers, clerks, and employés in the General Land Office from purchasing directly or indirectly or becoming interested in the purchase of public lands.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 48–50; Dec. Dig. § 30.*

For other definitions, see Words and Phrases, vol. 6, pp. 5793–5795; vol. 8, p. 7772.]

In Equity. Suit by the United States to set aside a patent issued by the government to defendant for a town lot in the City of Pocatello, Idaho. Decree for complainant.

P. E. Cavaney, Asst. U. S. Atty., of Boise, Idaho, for plaintiff.
Witty & Terrell, of Pocatello, Idaho, for defendant.

DIETRICH, District Judge. The government brings this suit to set aside a patent issued to the defendant for a town lot in the city of Pocatello, Idaho, its contention being that defendant was a deputy mineral surveyor of the United States for the District of Idaho, and that therefore, under the provisions of section 452 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 257), he was disqualified from becoming a purchaser. Section 452 is as follows:

"The officers, clerks, and employés in the General Land Office are prohibited from directly or indirectly purchasing or becoming interested in the purchase of any of the public land; and any person who violates this section shall forthwith be removed from his office."

In the complaint it is charged not only that the defendant was a deputy mineral surveyor, but that he fraudulently concealed from the officers of the land department that fact, and thus induced them illegally to issue the patent. Defendant admits that he purchased the lot,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and that at the time of the purchase he was a deputy mineral surveyor, as alleged; but he denies that he was guilty of any fraudulent act or purpose. The record wholly fails to substantiate the charge of actual fraud, and that phase of the case may be laid aside without discussion; I have no doubt that the defendant made the purchase in good faith, without any thought that he was disqualified under the law. The real inquiry, therefore, is whether he was so disqualified.

[1] The question whether or not a deputy mineral surveyor is an officer or employé of the General Land Office within the scope of section 452 has been recently put to rest by the decision of the Supreme Court of the United States in Waskey v. Hammer, 223 U. S. 85, 32 Sup. Ct. 187, 56 L. Ed. 359. It is there distinctly held both that such a mineral surveyor is disqualified under the statute, and that, as a result of such disqualification, a patent issued to him in violation of the statute, confers no right. The rule thus announced is controlling here, and it follows as a matter of course that the plaintiff is entitled to the relief prayed for, if the lot was public land.

[2] The status of the lot is not called into question either in the answer or the argument; however, a brief explanation will not be out of place. The Pocatello townsite was, until the year 1888, a part of what is known as the Ft. Hall Indian Reservation. On the 27th day of May, 1887, by treaty, the Shoshone and Bannack tribes of Indians, who were then occupying the reservation, relinquished to the United States all their estate, right, title, and interest in and to that portion of the reservation which thereafter became the Pocatello townsite. This treaty was ratified by an act of Congress approved September 1, 1888, c. 936, 25 Stat. 452, wherein also provision was made for the sale and other disposition of the lands so relinquished. It was, in brief, provided that the ceded tract should be surveyed, laid off into lots and blocks, and, after due appraisement, sold in lots at public auction to the highest bidders. No lot was to be appraised at less than $10 and no bid should be received for less than the appraised value of any lot. All lots not sold at the public sale provided for were to be thereafter subject to private entry at the appraised value thereof. Section 7 of the act provides:

"That the Secretary of the Interior shall make all needful rules and regulations necessary to carry this act into effect; he shall determine the compensation of the surveyor for his services in laying out said lands into town lots, also the compensation of the appraisers provided for in section 4, and shall cause patents in fee simple to be issued to the purchasers of the lands sold under the provisions of this act in the same manner as patents are issued to public lands."

The register of the local land office was empowered to conduct the public sale. The funds arising from the sale of the lands, after deducting the expenses of surveying, appraisement, and sale, were to be deposited in the treasury of the United States to the credit of the Indians. Apparently the lot in question was appraised at $10, was not purchased at the public sale, and therefore became subject to private entry. It will thus be seen that, under the treaty, the title to the lands vested exclusively in the United States, and Congress committed to the Interior Department and to the General Land Office the duty and

responsibility of disposing of them. While the proceeds were to go to the Indians, and the method of disposition is in some respects different from that employed in disposing of other portions of the public domain, the administration of the act called for quite as great an exercise of disinterested and honest discretion as does the administration of any of the general public land acts, and it was quite as important that the officers, clerks, and employés of the General Land Office should be free from motives of self-interest in the administration of this law as in case of any of the other laws pertaining to the disposition of public lands. The phrase "public lands" is not always used in the same sense (United States v. Blendaur, 128 Fed. 910, 63 C. C. A. 636), and, in construing it, regard must be had for the scope and purpose of the act or section in which it is used, and in that view it is thought that, as employed in section 452 of the Revised Statutes, it should be given a meaning wide enough to embrace the land in controversy. True, deputy mineral surveyors exercise no control over, or discretion in, the matter of the disposition of the Pocatello townsite, but section 452 does not operate merely to disqualify employés of the land office from purchasing lands to which their duties directly relate. In the wisdom of Congress, it was provided that no employé of the Land Office, wherever he might be employed, or whatever might be his duties, should directly or indirectly become the purchaser of, or interested in the purchase of, any public land, wherever the same might be situated. A register or receiver of a United States land office in Idaho has nothing to do with the disposition of public lands in California, and yet, under the general prohibition of the section, he is disqualified from purchasing public lands in California. So here, while a deputy mineral surveyor may have nothing to do with the disposition of Pocatello townsite lots, he falls within the sweeping prohibition of the section, and is thereby disqualified from becoming a purchaser. It is possible that the purpose of the law might be accomplished by a more restricted provision, but that is a consideration addressed to the legislative rather than the judicial department of the government.

It follows that a decree must go in favor of the plaintiff. In view, however, of the fact that the defendant in good faith paid the purchase price of the lot, and that, so far as the record shows, no demand was made upon him to relinquish his patent or to reconvey the title to the government, before the suit was commenced, the decree will be without costs.